ORDER AMENDING OPINION AND CONCURRENCE AND AMENDED OPINION AND AMENDED CONCURRENCE
ORDER
The opinion and concurrence filed May 8, 2008, slip op. 5135, are amended as follows:
1. At slip op. 5144, lines 7-12, delete the following sentences:
However, the government in that case took additional steps beyond simply entering the defendant’s arrest warrant into the law enforcement system. The government contacted Unsolved Mysteries and America’s Most Wanted, which aired segments on the case over twenty times in the United States and at least once in Mexico. Id. at 1115.
Replace with the following sentence:
However, the government in that case took additional steps beyond simply entering the defendant’s arrest warrant into the law enforcement database system and the district court specifically found that the government had been diligent in pursuing the defendant.
2. At slip op. 5144, lines 13-15, delete the following sentence:
In contrast, in this case, the government made no effort beyond entering Mendoza’s arrest warrant in the law enforcement database.
Replace with the following sentence:
By contrast, in this case, the record is silent as to any efforts by the government to apprehend Mendoza beyond merely entering Mendoza’s arrest warrant in the law enforcement database, and the evidence before the district court is insufficient to support a finding that the government conducted a serious effort to find Mendoza.
3. At slip op. 5149, lines 1-5, delete the following sentence:
Because there was no extradition treaty that would permit the IRS to bring Mendoza to trial against his will, notifying Mendoza of his indictment and asking him to return to the United States to face charges against him might have been the IRS’s only hope of locating him and bringing him to trial.
Replace with the following sentence:
Because the government believed that there was no extradition treaty that would permit the IRS to bring Mendoza to trial for tax offenses against his will, notifying Mendoza of his indictment and asking him to return to the United States to face the charges against him *761 might have been the IRS’s only hope of locating him and bringing him to trial.
No further petitions for rehearing or rehearing en banc may be filed.
IT IS SO ORDERED.
OPINION
T.G. NELSON, Circuit Judge:
Paul Mendoza appeals his convictions on two counts of subscribing to a false income tax return in violation of 26 U.S.C. § 7201. Mendoza contends that the eight-year delay between his indictment and his arrest violated his Sixth Amendment right to a speedy trial. He further contends that the district court plainly erred when it ordered restitution during sentencing. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.
I. Background
Mendoza’s conviction was based on two income-tax returns that underreported his income. Mendoza worked for a management company in Los Angeles, California called Nobel Marketing Company where he was in charge of administering Nobel Medical Clinic. As the administrator, Mendoza was authorized to deposit clients’ checks into the clinic’s bank accounts, but he was not a signatory on the accounts.
During 1989 and 1990, Mendoza embezzled approximately $285,000 from the clinic by personally collecting some of the clinic’s checks and depositing them into his own bank accounts or cashing the checks at a check-cashing company. The money from these transactions was not reported on his 1989 or 1990 tax returns.
During the Internal Revenue Service’s (“IRS”) investigation of Mendoza’s failure to report the money on his income tax returns, Mendoza left the United States and went to the Philippines. On June 19, 1995, prior to Mendoza’s departure from the United States, IRS Special Agent Slotsve attempted to serve Mendoza with a Grand Jury subpoena for handwriting and fingerprint exemplars by serving the subpoena on Mendoza’s attorney. When Mendoza failed to meet with Agent Slotsve on June 27, 1995, as required by the subpoena, Agent Slotsve again contacted the attorney. The attorney informed Agent Slotsve that he no longer represented Mendoza.
Based on previous correspondence with Mendoza’s attorney, Agent Slotsve determined that Mendoza had left the Los Angeles area for Seattle, Washington. Agent Slotsve then sent the subpoena to IRS Special Agent Lynn in the Seattle area so that Agent Lynn could serve Mendoza. Agent Lynn called Mendoza’s wife on January 4, 1996. Mendoza’s wife informed Agent Lynn that Mendoza had left her and her children and had been living in the Philippines since June 1995. Mendoza’s wife gave Agent Lynn a phone number for Mendoza’s relatives in the Philippines.
After Agent Lynn spoke with Mendoza’s wife and left a message for Mendoza at his sister’s house in the Philippines, Mendoza returned Agent Lynn’s phone call from the Philippines. Agent Lynn was not in the office so Mendoza spoke with an FBI agent, but refused to give the agent his contact information. On January 9, 1996, Mendoza called again from a pay phone in the Philippines and spoke with Agent Lynn. Mendoza stated that he was planning on returning to Seattle in two months and that he was in the Philippines selling property so he could defend himself in California. Mendoza refused to give Agent Lynn his contact information. Agent Lynn did not inform Mendoza that he wanted to serve him with a subpoena. After Agent Lynn spoke with Mendoza, he called Agent Slotsve to inform him of his conversation with Mendoza.
*762 Mendoza was indicted on April 12, 1996. After the indictment, the government put a warrant out on the law enforcement database so that Mendoza would be detained when he attempted to return to the United States. The warrant was the only attempt the government made to apprehend Mendoza; the government made no attempt to contact Mendoza to inform him that he had been indicted.
Mendoza returned to the United States in June 2004, but was not arrested until October 13, 2004. After his arrest, Mendoza sought and received seven continuances of the scheduled trial date, from December 7, 2004, to March 14, 2006. On January 3, 2006, Mendoza filed a motion to dismiss the indictment because the eight-year delay between his indictment and his arrest violated his Sixth Amendment right to a speedy trial. The district court denied the motion, but did not make any factual findings, stating only: “This Court DENIES Defendant’s Motion to Dismiss the Indictment finding that ... (2)[ ] defendant Mendoza’s speedy trial rights have not been violated.”
Mendoza was found guilty on two counts of subscribing to a false income-tax return after a jury trial and was sentenced to a term of imprisonment of thirteen months and restitution in the amount of $79,837.90.
II. Mendoza’s Right to a Speedy Trial
A district court’s decision on a Sixth Amendment speedy trial claim is reviewed de novo. United States v. Gregory, 322 F.3d 1157, 1160 (9th Cir.2003). Factual determinations underlying the claim are reviewed for clear error. Id.
The Sixth Amendment guarantees that criminal defendants “shall enjoy the right to a speedy and public trial____” U.S. Const, amend. VI. To determine whether a defendant’s Sixth Amendment speedy trial right has been violated, we balance the following four factors: “[ljength of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.” Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
None of these four factors are either necessary or sufficient, individually, to support a finding that a defendant’s speed trial right has been violated. Id. at 533, 92 S.Ct. 2182. Rather the factors are related and “must be considered together with such other circumstances as may be relevant.” Id. Further, the balancing of these factors, and other relevant circumstances, “must be carried out with full recognition that the accused’s interest in a speedy trial is specifically affirmed in the Constitution.” Id.
A. Length of Delay
For speedy trial claims, the length of the “delay is measured from ‘the time of the indictment to the time of trial.’ ” United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir.2003) (quoting United States v. Sears, Roebuck & Co., 877 F.2d 734, 739 (9th Cir.1989)). If the length of delay is long enough to be considered presumptively prejudicial, an inquiry into the other three factors is triggered. Barker, 407 U.S. at 530, 92 S.Ct. 2182. Generally, a delay of more than one year is presumptively prejudicial. See Gregory, 322 F.3d at 1161-62.
In this case, the indictment was filed on April 12,1996, and the trial did not start until April 25, 2006. We find that this ten-year delay creates a presumption of prejudice and triggers an inquiry into the other three factors.
B. Reason for the Delay
The government has “some obligation” to pursue a defendant and bring *763 him to trial. United States v. Sandoval, 990 F.2d 481, 485 (9th Cir.1993). If the government fulfills that obligation by pursuing a defendant with reasonable diligence, the defendant does not have a speedy trial claim. Doggett v. United States, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). On the other hand, if the government is negligent in pursuing the defendant, prejudice is presumed. Id. at 657, 112 S.Ct. 2686.
The government has the primary, though not exclusive, responsibility to ensure that the defendant is brought to trial. See Sandoval, 990 F.2d at 482. If a defendant attempts to avoid detection, the government is not required to “ ‘make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension.’ ” Id. at 485 (quoting Rayborn v. Scully, 858 F.2d 84, 90 (2d Cir.1988)). However, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit. See Doggett, 505 U.S. at 653, 112 S.Ct. 2686.
In this case, the agent in charge of Mendoza’s investigation made no effort to contact Mendoza to Inform him that he had been indicted. The government had Mendoza’s wife’s telephone number and the telephone number of Mendoza’s relatives in the Philippines. But rather than attempting to inform Mendoza that he had been indicted through those avenues, the government simply put a warrant out on the law enforcement database so that Mendoza would be detained when he returned to the United States.[1] As a result, Mendoza was not informed he had been indicted until more than eight years after the indictment.
Even though Mendoza left the country prior to his indictment, the government still had an obligation to attempt to find him and bring him to trial. After Doggett, the government was required to make some effort to notify Mendoza of the indictment, or otherwise continue to actively attempt to bring him to trial, or else risk that Mendoza would remain abroad while the constitutional speedy-trial clock ticked. However, the government made no serious effort to do so. Further, there is no evidence that Mendoza was keeping his whereabouts unknown. Although he refused to give his own contact information, the government still had his relative’s contact information. And when a government agent contacted Mendoza’s wife and left a message with his sister, Mendoza returned the call from the Philippines on two different occasions.
Nor does Mendoza’s failure to return to the United States as he stated he would support the argument that he was deliberately avoiding contact with the government. Mendoza was unaware of the indictment, so he did not know that he needed to return. And it was not Mendoza’s responsibility to contact the government during the investigation. Based on its previous success in contacting Mendoza, the government was negligent when it failed to attempt to inform Mendoza of the indictment by calling either the wife or the relative’s telephone number. Therefore, the delay between Mendoza’s indictment and arrest was caused by the government’s negligence, and this factor weighs in favor of Mendoza.
Our recent decision in United States v. Corona-Verbera, 509 F.3d 1105 (9th Cir. 2007), does not alter this conclusion. In *764 Corona-Verbera, the defendant was in Mexico and there was an almost eight-year delay between his indictment and his arrest. Id. at 1111. However, the government in that case took additional steps beyond simply entering the defendant’s arrest warrant into the law enforcement database system and the district court specifically found that the government had been diligent in pursuing the defendant.
By contrast, in this case, the record is silent as to any efforts by the government to apprehend Mendoza beyond merely entering Mendoza’s arrest warrant in the law enforcement database, and the evidence before the district court is insufficient to support a finding that the government conducted a serious effort to find Mendoza.
C. Defendant’s Assertion of Speedy Trial Right
There is no evidence that Mendoza knew of his indictment, such as evidence that the government had attempted to notify Mendoza by leaving a message with his relatives. Therefore, Mendoza could assert his speedy trial right as to the eight-year period between his indictment and his arrest. Cf. Sandoval, 990 F.2d at 485 (holding that the defendant could not assert a speedy trial right under Doggett because he was “well aware of the indictment against him [and] skipped bail and became a fugitive to avoid prosecution”).
However, Mendoza did not assert his right to a speedy trial until after he made numerous requests for continuances and delayed the trial date by over a year. Because Mendoza caused this delay before his assertion of his speedy trial rights, this factor does not weigh in favor of Mendoza nor in favor of the government. Corona-Verbera, 509 F.3d at 1116.
D. Prejudice
The final factor is prejudice. The Supreme Court has recognized three forms of prejudice that can result from post-indictment delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) “the possibility that the [accused’s] defense will be impaired by dimming memories and loss of exculpatory evidence.” Doggett, 505 U.S. at 654, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182) (internal quotations omitted). “Of these forms of prejudice, ‘the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.’ ” Id. (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182).
This final form of prejudice is not only the most important, it is also the most difficult to prove because “time’s erosion of exculpatory evidence and testimony ‘can rarely be shown.’ ” Id. at 655, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182). In other words, excessive delays can “compromise[ ] the reliability of a trial in ways that neither party can prove or, for that matter, identify.” Id.
Due to these concerns, “no showing of prejudice is required when the delay is great and attributable to the government.” United States v. Shell, 974 F.2d 1035, 1036 (9th Cir.1992) (citing Doggett, 505 U.S. at 657-58, 112 S.Ct. 2686). Instead, we presume prejudice. Id. Further, “[t]he presumption that pretrial delay has prejudiced the accused intensifies over time.” McNeely v. Blanas, 336 F.3d 822, 831 (9th Cir.2003).
If, in this case, the government had pursued Mendoza with reasonable diligence, his speedy trial claim would have failed unless he could show “specific prejudice to his defense.” Doggett, 505 U.S. at 656, 112 S.Ct. 2686. However, the government did not exercise due diligence. In *765 stead, the government was negligent in pursuing Mendoza, and the eight-year delay between Mendoza’s arrest and indictment was attributable to the government. There is, therefore, a strong presumption that Mendoza suffered prejudice, which the Government has not rebutted. See id. at 658 n. 4, 112 S.Ct. 2686 (stating that the absence of particularized trial prejudice “has not, and probably could not have, affirmatively proved that the delay left [the defendant’s] ability to defend himself unimpaired”).
III. Conclusion
After balancing the Barker factors, we conclude that Mendoza’s Sixth Amendment speedy-trial right was violated. The eight-year delay between Mendoza’s indictment and arrest was a result of the government’s negligence, so we presume that Mendoza suffered prejudice. As a result, a dismissal of Mendoza’s indictment is warranted.[2]
Accordingly, we REVERSE and REMAND the ease for proceedings consistent with this opinion.

. For reasons not made clear in the record nor in oral argument, this warrant did not result in Mendoza being detained when he reentered the United States, but did eventually lead to his arrest.

. Because we find that Mendoza's Sixth Amendment speedy-trial right was violated, we do not need to address his arguments related to sentencing.