**Certiorari Denied, August 18, 2016, No. S-1-SC-36008**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:   2016-NMCA-076**

**Filing Date: June 23, 2016**

**Docket No. 33,920**

**STATE OF NEW MEXICO,**

　　**Plaintiff-Appellee,**

**v.**

**MARK GALLEGOS,**

　　**Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**FRENCH, Judge.**

**{1}**　　A jury convicted Mark Gallegos (Defendant) of shoplifting of property with a value over $500 but not more than $2500, contrary to NMSA 1978, Section 30-16-20(B)(3) (2006); conspiracy to commit shoplifting, contrary to NMSA 1978, Section 30-28-2 (1979); and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2001).

Defendant appeals his convictions. Defendant argues that (1) his constitutional right to a speedy trial was violated, (2) evidence was improperly admitted in violation of the rules of evidence and the Confrontation Clause of the United States Constitution, (3) a witness was improperly allowed to testify, (4) the district court improperly ruled that Defendant could be questioned about a conditional discharge, and (5) there was insufficient evidence to support Defendant's conviction for felony shoplifting. We are not persuaded by Defendant's arguments and, therefore, affirm his convictions.

## BACKGROUND

**{2}** On January 28, 2011, a security officer in a department store, Christopher Davidson (Davidson), observed Defendant and another person opening videos and concealing the videos in their clothes. Defendant exited the store and was contacted by Albuquerque Police Department officers in the parking lot. Defendant was indicted on April 27, 2011. He was brought to trial on December 16, 2013. In our discussion of the issues, we provide additional facts as necessary.

## DISCUSSION

## I.     SPEEDY TRIAL

**{3}** The accused in New Mexico have a fundamental right to a speedy trial guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. Our courts have not treated those rights differently, thus we view them as coextensive. *State v. Spearman*, 2012-NMSC-023, ¶ 16 n.1, 283 P.3d 272. Because the specific facts and circumstances of each case determine whether a person's speedy trial right has been violated, the speedy trial analysis is not susceptible to an inflexible, bright-line approach. *Garza*, 2009-NMSC-038, ¶¶ 11, 14.

**{4}** Our courts have adopted the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972). *Garza*, 2009-NMSC-038, ¶ 13. That analysis requires a court to consider "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated." *Id.* ¶ 13 (internal quotation marks and citation omitted). None of these factors is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial[, but, instead,] they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. The *Barker* analysis requires that "[e]ach of [the four] factors is weighed either in favor of or against the [s]tate or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *Spearman*, 2012-NMSC-023, ¶ 17.

**{5}** Defendant appeals the district court's denial of his motion to dismiss on speedy trial grounds. We proceed by analyzing the procedural history of this case through the lens of the

four-factor *Barker* analysis. We apply a deferential standard of review to the factual findings of the district court and review de novo the weighing and balancing of the *Barker* factors. *Spearman*, 2012-NMSC-023, ¶ 19.

## A.    The Length of Delay

**{6}**    The length of the delay is both "a triggering mechanism requiring further inquiry into the *Barker* factors" and also one of the four factors in the *Barker* analysis. *Spearman*, 2012-NMSC-023, ¶ 20 (internal quotation marks and citation omitted). Whether or not the threshold for further inquiry is met depends upon whether the delay is considered presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶ 23. The amount of time considered presumptively prejudicial varies with the complexity of the case. *Spearman*, 2012-NMSC-023, ¶ 21. Here, the district court found, and the parties agree, that this case was simple. For a simple case, a delay of longer than one year is considered to be presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶ 47.

**{7}**    Defendant's right to a speedy trial attached when he was indicted in district court on April 27, 2011. *See State v. Taylor*, 2015-NMCA-012, ¶ 7, 343 P.3d 199 (stating that the right to a speedy trial attaches when the defendant becomes an accused, either by arrest, indictment, or criminal information). Defendant's trial commenced on December 16, 2013. The time to trial was nearly thirty-two months, approximately twenty months past the one-year threshold for a simple case. Because the delay was presumptively prejudicial, we continue to a full *Barker* analysis.

**{8}**    This case went to trial more than two-and-one-half years after Defendant's speedy trial right attached. That is a very long time for a simple case, and the length of delay must therefore weigh heavily against the State. *See Taylor*, 2015-NMCA-012, ¶ 9 (holding that a delay of nearly two years in a simple case was to be weighed heavily against the State).

## B.    Reasons for the Delay

**{9}**    There are four types of delay, each of which is to be weighed differently by the appellate courts. *Garza*, 2009-NMSC-038, ¶ 25. "[O]fficial bad faith in causing delay will be weighed heavily against the government," as will "a deliberate attempt to delay the trial in order to hamper the defense[.]" *Id.* (alteration, internal quotation marks, and citation omitted). Negligent or administrative delay is weighed against the State because, at bottom, the burden rests with the government to bring a defendant to trial. *Id.* ¶ 26. That type of delay is weighed "more lightly." *Id.* (internal quotation marks and citation omitted). The degree of weight tallied against the State for negligent delay "is closely related to the length of delay." *Id.* Appropriate delay justified by "a valid reason, such as a missing witness," is weighed neutrally. *Id.* ¶ 27 (internal quotation marks and citation omitted). Finally, our Supreme Court has acknowledged delay "caused by the defense, which weighs against the defendant." *State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121 (internal quotation marks and citation omitted).

**{10}** Mindful that the speedy trial analysis depends on the particular facts and circumstances of each case, we review the pertinent facts of this case in order to allocate to each side the reasons for the delay and determine the weight we should assign the reasons for the delay. *See Garza*, 2009-NMSC-038, ¶ 11 (stating that the "substance of the speedy trial right is defined only through an analysis of the peculiar facts and circumstances of each case"); *State v. Tortolito*, 1997-NMCA-128, ¶ 8, 124 N.M. 368, 950 P.2d 811 ("Analysis of the second *Barker* factor involves allocating the reasons for the delay to each side and determining the weight attributable to each reason."). We proceed by dividing the time line of this case into periods for the purpose of our analysis of the reasons for delay.

**1.      April 27 to November 12, 2011**

**{11}** Defendant's speedy trial right attached when he was indicted on April 27, 2011. On July 29, 2011, the State filed a motion to compel selection of counsel for Defendant and request a speedy trial. The State also filed a demand for notice of intention to claim alibi and/or entrapment, a certificate that all information in the district attorney's file had been disclosed, a request for disclosure, and a notice of intent to call listed witnesses. A pretrial conference was held on October 12, 2011, at which by mutual assent the pretrial conference was postponed. The district court found that this delay was intended to be "about a month." A one-month delay implies that the pretrial conference should have taken place by November 12, 2011. We conclude that during the period of approximately six months and two weeks from April 27 to November 12, 2011, this case was proceeding more or less normally, and, accordingly, we weigh this time period neutrally. *See Taylor*, 2015-NMCA-012, ¶ 11 (weighing neutrally a period of delay when the case "was progressing in a normal fashion"); *see also Garza*, 2009-NMSC-038, ¶ 27 (recognizing that some pretrial delay is inevitable and justifiable).

**2.      November 13, 2011, to January 6, 2013**

**{12}** This case did not move forward at all after the October 12, 2011 pretrial conference until April 19, 2012, when the State filed a request for a status conference. The status conference was not set timely by the district court. On September 17, 2012, the State filed a motion to review the conditions of Defendant's release on the basis of Defendant's alleged arrest on other charges. That hearing was scheduled for November 20, 2012, and then vacated because Defendant was already in custody or believed to be. The hearing to review Defendant's conditions of release was rescheduled to January 17, 2013. On December 28, 2012, counsel for Defendant filed a notice of unavailability from January 7 through March 15, 2013.

**{13}** We conclude that the period from November 13, 2011, until January 6, 2013, counts as negligent and/or administrative delay. The hearing on Defendant's conditions of release did not serve to move the case forward. The delay was due to the failure of the State and the district court to move this case towards trial. This period of approximately thirteen months and three weeks weighs against the State.

### 3.    January 7 to March 15, 2013

**{14}**    Although Defendant's notice established counsel's unavailability from January 7 through March 15, 2013, counsel for Defendant was present at the January 17, 2013 hearing, and substitute counsel was present at a pretrial conference on March 6, 2013. Although delay caused by a defendant is weighed against that party, *Serros*, 2016-NMSC-008, ¶ 29, it does not appear from the record that defense counsel's unavailability caused any delay in this case. Thus, we weigh the approximately two month and one week period from January 7 to March 15, 2013, neutrally.

### 4.    March 16 to May 15, 2013

**{15}**    At a pretrial conference on March 6, 2013, the parties requested a plea hearing which the district court scheduled for May 14, 2013. No plea was reached at the May 14, 2013, hearing. On May 15, 2013, the district court issued a scheduling order, pursuant to which the trial was set for September 3, 2013.

**{16}**    We observe that although on March 6, 2013, the parties requested a setting in about one month, it took the district court approximately two months and one week. Had the district court set the hearing timely, it would have taken place by early April. We conclude that the period between March 16 and May 15, 2013 was in part administrative delay caused by the district court and in part ordinary and inevitable delay associated with moving a case towards trial. We weigh one month of the delay between March 16 and May 15, 2013 neutrally, and one month against the State as administrative delay.

### 5.    May 16 to September 3, 2013

**{17}**    Also during spring and summer of 2013, the parties were in the process of scheduling a pretrial interview with Davidson, the State's essential witness. On May 2, 2013, Davidson did not keep a scheduled appointment for a pretrial interview. At that time, the State had inaccurate contact information for Davidson. Pursuant to the hearing on May 14, 2013, the district court, on May 17, 2013, ordered the State to make Davidson available for a pretrial interview no later than June 13, 2013. The district court indicated that Davidson would be excluded as a witness if the June 13, 2013, deadline was not met unless extended for good cause. By May 30, 2013, the State had established contact with the witness and, on that day, made an inquiry to counsel for Defendant with regard to setting up an interview. Counsel for Defendant responded promptly, offering availability on either June 10 or June 11, 2013. The State did not respond to counsel for Defendant until June 13, 2013. The State suggested that the interview be set up sometime in July. On June 24, 2013, Defendant filed a motion to exclude the witness pursuant to Rules 5-501, 5-503, and 5-505 NMRA. That motion was denied without prejudice by the district court, which, instead, extended the deadline for completion of the interview with Davidson. On August 1, 2013, the interview was conducted.

5

**{18}** We conclude that the period from May 15 until June 11, 2013, weighs neutrally because the witness was missing until May 30, 2013, and, subsequently, the parties were in the process of setting up a timely interview. *See Garza*, 2009-NMSC-038, ¶ 27 (stating that a missing witness justifies appropriate delay). However, because the witness was no longer missing as of May 30, 2013, and the State did not timely respond to counsel for Defendant, who proffered reasonable dates of June 10 or June 11, 2013, for the interview, we analyze separately the delay from June 12 to September 3, 2013.

**{19}** Some reasons for the delay between June 12 and September 3, 2013, favor Defendant, and others, the State. On one hand, the State did not offer an explanation for its failure to respond to Defendant's attempt to schedule an interview. Moreover, the State missed the district court's deadline, receiving an extension only in retrospect. On the other hand, the State offered to set the interview in July. Rather than accept, Defendant chose to file a motion to exclude. Although the attempt to exclude Davidson rather than set up an interview may have been tactically reasonable, that choice colors our analysis of the delay to some degree. Moreover, the district court found that during at least some of this time period, counsel for Defendant "sort of was in and sort of was out" of the case as counsel was preparing to leave the public defender department. On July 26, 2013, new counsel entered an appearance on behalf of Defendant. Finally, and importantly, as of May 15, 2013, the trial had already been set for September 3, 2013. Defendant did not file a motion to continue the trial on the basis of the delay in interviewing Davidson. Thus, it does not appear that the delay in interviewing Davidson from June 12 until August 1, 2013, delayed the case.

**{20}** We conclude that the reasons for the delay between June 12 and September 3, 2013, do not favor either party. Although the State did not respond to Defendant's proposed dates, and missed the district court's initial deadline, the elapsed time did not ultimately serve to delay the trial. The district court's May 15, 2013, setting of the trial for September 3, 2013, falls just inside the boundary of the case proceeding in a normal fashion, given the circumstances of Defendant's representation. Thus, we weigh neutrally the time period between June 12 and September 3, 2013. In sum, the entire period of three months and three weeks from May 15 to September 3, 2013, is weighed neutrally.

**6.    September 3 to December 16, 2013**

**{21}** On August 30, 2013, counsel for Defendant filed a motion to continue the trial set for September 3, 2013. As reason, counsel cited the fact that she had only recently taken over the case and received additional discovery, and was not prepared for trial. Defendant argued that he had the right not only to a speedy trial but also to effective assistance of counsel. The court granted the motion and the trial was rescheduled for December 16, 2013. We observe that the delayed pretrial interview took place only six days after counsel entered her appearance on July 26, 2013, so the requested continuance cannot reasonably be ascribed to the delayed interview. Although the delay was requested by Defendant, we conclude that legitimate tension existed between the right of Defendant to effective assistance of counsel and Defendant's right to a speedy trial. We therefore weigh this period of approximately

three months and two weeks neutrally, rather than against Defendant. *See Serros*, 2016-NMSC-008, ¶ 47 (stating that it would be intolerable to force a defendant to surrender the right to effective assistance of counsel in order to protect the right to speedy trial and holding that delay attributable to changing counsel due to ineffective assistance of counsel is not to be counted against the defendant); *Garza*, 2009-NMSC-038, ¶ 11 ("Though speed is an important attribute of the right, if either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed." (alteration, internal quotation marks, and citation omitted)).

**7.      Summary of Reasons for Delay**

**{22}**      We weigh approximately sixteeen months and three weeks of the delay from indictment to trial neutrally, and fourteen months and three weeks of the delay against the State. Because all of the delay attributable to the State was either negligent or administrative, the weight we assign the delay increases in accordance with the length of the delay. *See Doggett v. United States*, 505 U.S. 647, 657 (1992) ("[The United States Supreme Court's] toleration of [official] negligence varies inversely with its protractedness[.]"). For reasons we explain below, we do not weigh the reasons for delay factor heavily against the State.

**C.      Assertion of the Right**

**{23}**      The failure of a defendant to assert his fundamental right to a speedy trial does not constitute a waiver of that right. *Garza*, 2009-NMSC-038, ¶ 32. However, "the timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over [the defendant's] objection or whether the issue was raised on appeal as an afterthought." *Id.*

**{24}**      Defendant asserted in one form or another his right to a speedy trial on four occasions: (1) verbally at the arraignment on July 11, 2011; (2) on August 1, 2011, included in an "Entry of Appearance, Request for Discovery, and Demand for Speedy Trial"; (3) included in Defendant's motion for a continuance of the trial date was an assertion that he was "entitled to speedy and fair trial but he is also entitled to effective assistance of counsel"; and (4) by filing a motion to dismiss on speedy trial grounds on October 31, 2013. Defendant's first two assertions—the verbal assertion at arraignment and the assertion included as part of a multi-purpose motion—were pro forma. Pro forma assertions are weighted towards Defendant, but only slightly. *See State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061 (stating that pro forma motions are generally afforded relatively little weight in this analysis). We weigh neutrally Defendant's assertion of his speedy trial right that was nestled within his request to continue the trial. Defendant's counsel requested to delay the trial primarily because counsel had only recently substituted for Defendant's former counsel, who was then no longer with the public defender department. Under those circumstances, we cannot weigh that assertion by Defendant of his speedy trial in his favor.

**{25}**      Defendant's final assertion was his motion to dismiss on speedy trial grounds.

7

Defendant's motion to dismiss was filed approximately six weeks prior to the scheduled trial setting. Because that motion was filed relatively close to the scheduled trial, we afford it less weight in Defendant's favor than if it had been filed earlier. *See State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782 ("[G]enerally, the closer to trial an assertion is made, the less weight it is given.").

**{26}** In sum, although Defendant's assertion of his right to a speedy trial was not especially vigorous, we conclude that Defendant adequately asserted his right and did not acquiesce to the delay. *See Taylor*, 2015-NMCA-012, ¶¶ 4, 18 (holding that where the defendant asserted the right to a speedy trial in magistrate court, stipulated that the delay caused by the defendant's motion to continue would not count against the state for the purpose of a speedy trial analysis, and filed a motion to dismiss on speedy trial grounds the day prior to trial, the defendant adequately asserted the right to a speedy trial right and did not acquiesce to delay); *Moreno*, 2010-NMCA-044, ¶ 35 (holding that where the defendant made a pro forma assertion of the right to a speedy trial and filed a pro se motion to dismiss two and one-half months before the date of his last scheduled trial date, this factor weighed slightly in favor of the defendant.)

### D.    Prejudice

**{27}** Preventing prejudice to those accused is "[t]he heart of the right to a speedy trial[.]" *Garza*, 2009-NMSC-038, ¶ 12. The speedy trial right is intended "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The prejudice to a defendant is analyzed with reference to these interests. *Garza*, 2009-NMSC-038, ¶ 35. Generally, "a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39.

**{28}** Defendant argues that he was prejudiced because he was subject to conditions of release while awaiting trial, he suffered undue anxiety and concern, photographs were lost that "might have assisted [Defendant's] defense," and police officer witnesses became unavailable. Moreover, argues Defendant, even if this Court does not agree that Defendant suffered particularized prejudice, the prejudice factor should nevertheless be weighed in his favor because the sheer length of the delay allows us to assume prejudice. We examine Defendant's contentions in turn.

**{29}** Defendant's assertions of prejudice due to the conditions of release and also anxiety and concern were not explained in detail, which limits the latitude of this Court to credit these contentions within the *Barker* analysis. *See Garza*, 2009-NMSC-038, ¶ 35 ("[W]ithout a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers."). Moreover, Defendant did not offer affidavits, testimony, or documentation in support of the allegation of prejudice due to the conditions of release or undue anxiety or concern. *See Spearman*, 2012-NMSC-023, ¶ 39 ("Allegations of counsel are not generally considered evidence.").

Accordingly, we hold that Defendant did not suffer prejudice based on the conditions of pretrial release or undue anxiety or concern.

**{30}** With regard to the unavailable officers, Defendant was required to "state with particularity what exculpatory testimony would have been offered" in order to show prejudice. *Garza*, 2009-NMSC-038, ¶ 36 (alteration, internal quotation marks, and citation omitted). Because Defendant has not demonstrated how the testimony of unavailable officers would have been helpful to his defense, Defendant has not suffered prejudice cognizable within the *Barker* framework on the basis of the officers' unavailability. Defendant's contention with regard to the missing photographs is similarly undeveloped. Defendant has not made any argument as to how or why the missing photographs negatively affected Defendant's defense. In the absence of any explanation, we cannot conclude that the loss of the photographs caused prejudice to the defense. The possibility that the defense will be impaired is "the most serious" type of prejudice, but the burden remains on the defendant to substantiate any such claims. *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). Defendant has not done so in this case.

**{31}** Defendant also argues that even if this Court concludes, as we have, that particularized prejudice has not been demonstrated, this Court should nevertheless conclude, under the circumstances of this case, that prejudice can be presumed and the prejudice factor should, therefore, be weighed at least slightly in Defendant's favor. Defendant cites both New Mexico and federal cases in support of his argument that the prejudice factor can be weighed in his favor despite Defendant's failure to demonstrate particularized prejudice. We do not agree with Defendant's reading of those cases. We recognize the cases cited by Defendant[1] as standing for the entrenched proposition that a particularized showing of prejudice is not required to establish a speedy trial violation when the length and reasons for delay weigh heavily in favor of the defendant and the defendant has adequately asserted his right to a speedy trial and not acquiesced to the delay. *Garza*, 2009-NMSC-038, ¶ 39 ("[I]f the length of delay and the reasons for the delay weigh heavily in the defendant's favor and the defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated."). However, we do not agree with Defendant that the prejudice factor of the speedy trial analysis weighs in his favor in the absence of a particularized showing of prejudice. *See id*. ¶ 37 ("[N]on-particularized prejudice is not the type of prejudice against which the speedy trial right protects." (alteration, internal quotation marks and citation omitted)). Thus, although Defendant's failure to show particularized prejudice is not dispositive to his claim of a speedy trial right violation, the prejudice factor of the speedy trial analysis does not weigh in Defendant's favor.

**E.     Weighing and Balancing the Four *Barker* Factors**

---

[1]*Doggett*, 505 U.S. at 654; *Garza*, 2009-NMSC-038, ¶ 39; *Taylor*, 2015-NMCA-012, ¶ 25.

9

**{32}** As this case illustrates, the weighing and balancing of the *Barker* factors is a difficult and sensitive process. *Moore v. Arizona*, 414 U.S. 25, 26 (1973); *see also Vermont v. Brillon*, 556 U.S. 81, 89 (2009) ("The speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.' " (citation omitted)). Central to the analysis is whether a defendant suffered prejudice as a consequence of the delay. *See Garza*, 2009-NMSC-038, ¶ 12 ("The heart of the right to a speedy trial is preventing prejudice to the accused."). However, even in the absence of a showing of particularized prejudice, the state violates a defendant's constitutional right to a speedy trial when the defendant demonstrates that "the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay[.]" *Id.* ¶ 39; *see also United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) ("[N]o showing of prejudice is required when the delay is great and attributable to the government." (internal quotation marks and citations omitted)). In this case, Defendant did not establish particularized prejudice, but the length of delay weighs heavily in Defendant's favor, and he adequately asserted his right to a speedy trial. The determinative question, then, is whether the reasons for delay weigh heavily in Defendant's favor. As we stated in paragraph twenty-two of this Opinion, they do not. We explain.

**{33}** Of the total delay in this case from April 27, 2011, to December 16, 2013, we summarize the reasons for delay as follows: we weigh approximately sixteen months and three weeks neutrally and weigh fourteen months and three weeks against the State. For this simple case, the presumptively prejudicial period was one year. The specific question facing this Court is whether fourteen months and three weeks of negligent and administrative delay weigh heavily against the State when the prejudicial period for this simple case is twelve months.

**{34}** Defendant has not cited to any case to hold that a person's speedy trial right was violated without a particularized showing of prejudice when the delay was strictly administrative and/or negligent and only exceeded the presumptively prejudicial period by a few months, as in this case. Typically, the period of negligent and administrative delay is considerably longer where a court has held that a defendant's speedy trial right has been violated without a showing of prejudice. *See, e.g.*, *Doggett*, 505 U.S. at 657-58 (holding that negligent delay of six times the presumptively prejudicial period was sufficient to support a speedy trial violation without requiring a showing of prejudice); *Mendoza*, 530 F.3d at 765 (holding that eight years of negligent delay where the presumptively prejudicial period was one year was sufficient to support a speedy trial violation without requiring a showing of prejudice). Although there are recent New Mexico cases holding that an amount of good-faith governmental delay close to that found in this case supports a speedy trial violation without a particularized showing of prejudice, even those holdings are supported by more delay than occurred in this case. *See Taylor*, 2015-NMCA-012, ¶¶ 11-12, 16-17 (holding that approximately nineteen months of negligent and administrative delay weighed heavily against the government in a simple case and supported a speedy trial violation in the absence of particularized prejudice); *State v. Flores*, 2015-NMCA-081, ¶ 37, 355 P.3d 81, *cert. denied*, 2015-NMCERT-008, 369 P.3d 368 (holding that thirty-six months of negligent and

administrative delay attributable to the State in a case with a presumptively prejudicial period of eighteen months supported a speedy trial violation without a particularized showing of prejudice). While we remain mindful that the State bore the burden of bringing Defendant to trial and, moreover, that the right at issue is a fundamental constitutional right, we do not weigh fourteen months and three weeks of negligent and administrative delay heavily against the State. Therefore, given that Defendant did not demonstrate particularized prejudice, we affirm the finding of the district court and hold that Defendant's right to a speedy trial was not violated. *See Garza*, 2009-NMSC-038, ¶ 39 (stating that only when the length of and reasons for delay weigh heavily against the state and the defendant adequately asserts the right to a speedy trial and does not acquiesce to delay, is a defendant able to successfully assert a speedy trial violation without a showing of particularized prejudice).

## II.    ADMISSION OF THE EXHIBIT

**{35}**    The district court admitted two training mode receipts into evidence as an exhibit. Each training mode receipt was created on a register belonging to the store and consisted of a list of prices for merchandise summed to a total amount. Defendant argues that the district court's admission of the exhibit violated both the rules of evidence and the Confrontation Clause of the Sixth Amendment of the United States Constitution. We examine Defendant's arguments in turn.

### A.    Hearsay

**{36}**    We review the admission of evidence under the evidentiary rules for an abuse of discretion. *State v. Branch*, 2010-NMSC-042, ¶ 9, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The district court abuses its discretion when a ruling "is clearly against the logic and effect of the facts and circumstances of the case." *State v. Largo*, 2012-NMSC-015, ¶ 22, 278 P.3d 532 (internal quotation marks and citation omitted). "When there exist reasons both supporting and detracting from a [district] court decision, there is no abuse of discretion." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (internal quotation marks and citation omitted).

**{37}**    Defendant contends that the exhibit was inadmissible hearsay and therefore, its admission was an abuse of discretion. The district court ruled that the exhibit was admissible under the hearsay exception for records of regularly conducted activity.

**{38}**    "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *State v. King*, 2015-NMSC-030, ¶ 24, 357 P.3d 949 (internal quotation marks and citation omitted); *see also* Rule 11-801(C) NMRA. Hearsay is inadmissible unless it falls within an exception. Rule 11-802 NMRA. One such exception is the admission of records of regularly conducted activity, Rule 11-803(6) NMRA, also known as the "business records exception." *State v. Cofer*, 2011-NMCA-085, ¶ 9, 261 P.3d 1115 (noting that the exception for records of regularly conducted activity is also known as the "business records

11

exception"). Pursuant to Rule 11-803(6), evidence is admissible if it is

> [a] record of an act, event, condition, opinion, or diagnosis if
> > (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge,
> > (b) the record was kept in the course of a regularly conducted activity of a business, institution, organization, occupation, or calling, whether or not for profit,
> > (c) making the record was a regular practice of that activity, and
> > (d) all these conditions are shown by the testimony of the custodian or another qualified witness, . . . [unless] the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

**{39}** The State laid the following foundation for admission of the exhibit through Davidson's testimony. Police officers retrieved merchandise from Defendant's partner and Defendant's car. The police officers gave the recovered merchandise to Davidson. Because Davidson was not trained to use the store register, he enlisted the help of a customer service manager to scan the merchandise. Under Davidson's supervision, the customer service manager scanned the items provided by Davidson into the store's computer system using one of the store's sales registers. In order to scan the merchandise without affecting the store's inventory count, the customer service manager operated the sales register in training mode. The sales register training mode was used by the store both to train cashiers and also to create price lists of merchandise in response to a shoplifting event, as in this case. Davidson stated that in training mode, the register uses the same pricing database used by the store to scan and price merchandise for purchase. Over two sessions, two lists of prices were generated and each list was automatically summed to a total. The purpose of creating the price lists was not only preparation for prosecution, but also for the internal use of the store in the store's case management system, in which the store keeps track not only of shoplifting incidents, but also incidents unrelated to crime.

**{40}** Over the objection of Defendant, the district court admitted the exhibit consisting of the two price lists. On appeal, Defendant contends that the price lists should have been excluded because they failed to meet the requirement under Rule 11-803(6) that a record be kept in the course of regularly conducted activity and that the State did not provide evidence that the computer system was reliable. Defendant argues that the lists were made in response to the shoplifting event and were made primarily for the purpose of prosecution. The State argues that whether the price lists were made for the purpose of prosecution is not dispositive and that, instead, the crux of the issue is whether the underlying data was kept in the course of regularly conducted activity.

**{41}** We agree with the State that the focus of our analysis is the relevant data—here, the pricing information—not the fact that the printout of the pricing data was made for trial. The price lists established store prices for the scanned merchandise. The price data was kept in

the store's computerized database for the purpose of pricing their merchandise. Evidence was not presented that the database itself was not reliable to generate the store's prices for the scanned merchandise. *See Roark v. Farmer's Group, Inc.*, 2007-NMCA-074, ¶ 32, 142 N.M. 59, 162 P.3d 896 (noting that "the burden of establishing lack of trustworthiness is on the party opposing admission"). The fact that the documents that comprised the exhibit, composed of data kept in the ordinary course of business, were created with an eye toward prosecution does not render the exhibit inadmissible. *See United States v. Yeley-Davis*, 632 F.3d 673, 680-81 (10th Cir. 2011) (holding that an exhibit composed of authenticated cell phone records, created solely at the request of law enforcement for use in a prosecution, qualified as a business record under the federal business records exception); *United States v. Burgos-Montes*, 786 F.3d 92, 119 (1st Cir. 2015) ("[E]xhibits showing selected data pulled from records that a company keeps in the ordinary course of business fall under the business records exception, even if the physical exhibits themselves were made to comply with a request from law enforcement.").

**{42}**     Defendant argues additionally that Davidson was "not . . . familiar with the workings of th[e] computer[,]" and "did not testify that he knew how the computer records (records of price in this case) are created and maintained." Although we suppose this argument is directed at Rule 11-803(6)(d), which, in relevant part, predicates qualification as a record of regularly conducted activity on testimony by "the custodian or other qualified witness," Defendant's argument is significantly underdeveloped. For the purpose of review, we will not guess at what Defendant's argument might be as to how the district court abused its discretion. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("[Appellate courts] will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). To fully review Defendant's argument, we would have to develop it ourselves, which creates substantial risk of error, *see id.*, and "would also be unfair to the opposing party—in this case, the [s]tate—that is not afforded an opportunity to fully develop an opposing argument." *State v. Murillo*, 2015-NMCA-046, ¶ 17, 347 P.3d 284. However, with regard to Davidson's knowledge of the store's computerized pricing system, we note that he testified that he participated in the creation of approximately 650 similar documents over approximately seven years, the register used was also used to price merchandise for sale, scanning merchandise in the training mode gave the true price of an item, and merchandise from other stores would not have scanned into the store's database. We decline to hold that the district court abused its discretion on the basis of Defendant's fragment of an argument on this point.

**{43}**     We conclude that the admission of the price lists as a record of the store prices of the scanned merchandise pursuant to Rule 11-803(6) was not contrary to the logic and effect of the facts and circumstances of the case. We therefore hold that the district court did not abuse its discretion in admitting the exhibit. *See Largo*, 2012-NMSC-015, ¶ 22 (stating that the district court abuses its discretion when a ruling "is clearly against the logic and effect of the facts and circumstances of the case" (internal quotation marks and citation omitted)).

**B.     Confrontation Clause**

13

**{44}** Defendant also makes a Confrontation Clause argument. Defendant argues that it was not sufficient to confront Davidson about the creation of the price lists and that Defendant had an unmet right to confront the customer service manager who performed the scans. We review de novo a challenge made pursuant to the Confrontation Clause. *State v. Lasner*, 2000-NMSC-038, ¶ 24, 129 N.M. 806, 14 P.3d 1282.

**{45}** The Confrontation Clause of the United States Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend VI. This is interpreted to mean that a defendant has the "right to confront those who bear testimony against him." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (internal quotation marks and citation omitted). A statement is "testimonial if the declarant made the statement primarily intending to establish some fact with the understanding that the statement may be used in a criminal prosecution." *State v. Navarette*, 2013-NMSC-003, ¶ 8, 294 P.3d 435. Pursuant to the Confrontation Clause, "an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citation omitted).

**{46}** The merchandise price lists were not testimonial because the underlying price data was not prepared for litigation but, instead, kept in the ordinary course of business. *See Melendez-Diaz*, 557 U.S. at 324 ("Business . . . records are generally admissible absent confrontation . . . because[,] . . . having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial[,] they are not testimonial."). However, the selection of merchandise to scan was testimonial. The selection of merchandise to scan was intended to prove—by inference after scanning to obtain store prices—the value of the merchandise taken by Defendant.

**{47}** Defendant had an opportunity to confront those who offered testimony against him about the merchandise that was scanned. Live testimony was provided by a police officer that the merchandise was gathered and given to Davidson. Davidson testified that he received the items from the police. Davidson testified that he handed each item received from the police to the customer service manager to scan and supervised the scanning of each item. Defendant was thus provided with the opportunity to confront the witness providing the testimonial statement establishing the fact used against him—i.e., the selection of the merchandise to be priced.

**{48}** Another approach to Defendant's argument is to analyze whether the customer service manager's act of scanning the merchandise given to her by Davidson and printing the resulting price lists was testimonial, triggering the right to cross-examine her about the creation of the price lists. We conclude that her act of scanning the merchandise and printing out the resulting price lists was not testimonial. This case is dissimilar to *Bullcoming v. New Mexico*. 564 U.S. 647, (2011). In *Bullcoming*, the United States Supreme Court held that the testimony of a surrogate analyst without personal knowledge of the defendant's test could

not serve as a substitute for the in-court testimony of the analyst that undertook a scientific interpretation of a gas chromatography test that required adherence to good analytical practices and entailed the possibility for human error at "each step." *Id*. at 2711 n.1, 2713. We distinguish *Bullcoming* for two interrelated reasons. First, the work performed by the customer service manager produced raw data and, therefore, she did not make an affirmation. According to Davidson's testimony, the customer service manager was required to set the sales register to training mode, but beyond that, the process was either performed by computer (the pricing and sums of the scanned merchandise) or rote (the scanning). Unlike the gas chromatography analyst in *Bullcoming* who made representations "not revealed in raw, machine-produced data," the price lists resulting from the scanning performed by the customer service representative entailed no representations by the customer service manager. *See id*. at 2714 (stating that the representations of "past events and human actions not revealed in raw, machine-produced data" by the original analyst triggered a right to confront him and not a surrogate without personal knowledge of the test performed); *id*. at 2722 (Sotomayor, J., concurring in part) ("[*Bullcoming*] is not a case in which the [s]tate introduced only machine-generated results."). Second, the scanning was entirely supervised by Davidson, who provided live testimony and was cross-examined. In *Bullcoming*, an analyst with personal knowledge was replaced in court by a surrogate analyst without any personal knowledge of the defendant's test. *Id*. at 2711-12. By contrast, Davidson had personal knowledge of the creation of the price lists. *See id*. at 2722 (Sotomayor, J., concurring in part) ("[*Bullcoming*] is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue."). Unlike the New Mexico Supreme Court in *Bullcoming*, the district court in this case did not permit the testimonial statement of one witness to enter into evidence through testimony in court of another because, unlike *Bullcoming*, the witness who did not testify did not make an independent testimonial statement. *See id*. at 2713 (stating that the error of the New Mexico Supreme Court was allowing the testimonial statement of one witness—the original lab analyst—to enter into evidence through testimony in court of another—the surrogate lab analyst). We conclude that Defendant's right to confront the witnesses against him did not include the customer service manager who scanned the merchandise given to her by Davidson and performed her task under Davidson's direct supervision.

**{49}**     For the reasons stated, we hold that the Confrontation Clause was not violated.

## III.     EXCLUSION OF THE WITNESS

**{50}**     Defendant contends that the district court committed reversible error when it declined to grant Defendant's motion to exclude Davidson. We review the district court's decision not to exclude Davidson for an abuse of discretion. *See State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25 (stating that the decision to impose sanctions for a discovery order violation rests within the discretion of the court).

**{51}**     On May 14, 2013, Defendant informed the district court that Davidson missed a pretrial interview scheduled for May 2, 2013. Davidson had left his employment, and the

15

State no longer knew how to locate him. The district court ordered that the interview take place by June 13, 2013. That order provided that the June 13, 2013, deadline would be extended only for good cause and that Davidson would be excluded as a witness if the deadline was missed. On May 30, 2013, the State informed counsel for Defendant that Davidson had been located and asked whether Defendant would like to set up an interview. Counsel for Defendant timely provided two potential interview dates. The State did not respond to Defendant until June 13, 2013, which was after the potential interview dates had passed. The State then offered to set up the interview sometime in July. Rather than set up the interview for July, Defendant filed a motion to exclude on June 24, 2013. On July 23, 2013, the district court heard and denied the motion without prejudice. The district court extended the deadline and ordered that the interview take place within two weeks. The interview took place on August 1, 2013, which was within the extended deadline of the district court.

**{52}** Exclusion of an essential witness is a severe sanction to be used only in extreme cases. *Id.* ¶ 21. "The trial court . . . should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible." *Id.* ¶ 16 (omission in original) (internal quotation marks and citation omitted). ("[T]he refusal to comply with a district court's discovery order only rises to the level of exclusion or dismissal where the [s]tate's conduct is especially culpable, such as where evidence is unilaterally withheld by the [s]tate in bad faith, or all access to the evidence is precluded by [s]tate intransigence." *Id.* ¶ 17. In the absence of an "intentional refusal to comply with a court order, prejudice to the opposing party, and consideration of less severe sanctions[,]" exclusion of a witness is improper. *Id.* ¶ 15.

**{53}** The district court did not abuse its discretion when it denied without prejudice Defendant's motion to exclude Davidson. At the time of the hearing on the motion, the trial was more than one month away. The State had already offered to set up the interview in July, thus demonstrating good faith. In the end, the interview was conducted, and, eventually, the trial was continued for more than three months at Defendant's request. The record does not suggest that Defendant was unable to effectively use the information from the interview at trial. *See id.* ¶ 20 (stating that when disclosure is delayed, exclusion is not proper when the defendant's counsel has not been prevented from using the material effectively). Under those circumstances, we conclude that this case falls considerably short of the standard for exclusion.

## IV. CROSS-EXAMINATION OF DEFENDANT ABOUT CONDUCT RELATED TO DEFENDANT'S CONDITIONAL DISCHARGE

**{54}** Defendant filed a motion in limine seeking to exclude reference to Defendant's prior criminal record pursuant to Rules 11-401, 11-403, and 11-609 NMRA. Specifically, Defendant sought to exclude reference to a case in which Defendant pleaded guilty to larceny and criminal damage to property and was granted a conditional discharge. The district court excluded reference to Defendant's criminal case. However, the district court

allowed cross-examination of Defendant about the underlying conduct to the extent that it was probative of truthfulness or untruthfulness, pursuant to Rule 11-608(B) NMRA. The district court ruled that the State could not introduce extrinsic evidence, but, instead, was bound by Defendant's answers. Defendant chose not to testify. On appeal, Defendant argues that the district court improperly ruled that Defendant could be cross-examined about conduct probative to his character for truthfulness related to the underlying case for which Defendant received a conditional discharge. We review the decision of the district court to admit or exclude evidence for an abuse of discretion. *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031.

**{55}** Pursuant to Rule 11-608(B)(1), cross examination about specific instances of conduct probative of the witness's character for truthfulness is generally admissible, although extrinsic evidence is not admissible. This includes a defendant who chooses to testify. *See State v. Casillas*, 2009-NMCA-034, ¶ 43, 145 N.M. 783, 205 P.3d 830 (stating that a defendant can be cross-examined on conduct not resulting in a criminal conviction that is probative of truthfulness or untruthfulness). The ruling of the district court was a relatively straightforward application of Rule 11-608(B)(1). Defendant argues that his guilty plea that resulted in a conditional discharge did not equate to a conviction. That does not change the result under Rule 11-608(B) in Defendant's favor. We hold that the district court did not abuse its discretion in ruling that Defendant could be cross-examined on specific instances of conduct related to Defendant's conditional discharge to the extent that the conduct was probative of Defendant's character for truthfulness. *See* Rule 11-608(B) (stating that a court may allow cross-examination regarding specific instances of conduct not resulting in a criminal conviction that are probative of the witness's character for truthfulness).

## V. SUFFICIENCY OF THE EVIDENCE

**{56}** Defendant argues that his conviction for felony shoplifting pursuant to Section 30-16-20(A),(B)(3) was not supported by sufficient evidence. Specifically, Defendant argues that the value of the merchandise was not more than $500, a required element. *See* § 30-16-20(B)(2),(3) (stating that shoplifting merchandise with a value of more than $250 and not more than $500 is a misdemeanor but shoplifting merchandise of more than $500 and not more than $2500 is a fourth degree felony). Defendant contends that "[s]ome of the videos [used to determine the value shoplifted] were from another store."

**{57}** When reviewing a sufficiency of the evidence claim on appeal, we ask whether the evidence is such that, when viewed "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[,] . . . a rational jury *could* have found beyond a reasonable doubt the essential [elements] required for a conviction." *State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245 (internal quotation marks and citations omitted).

**{58}** The jury received evidence in the form of testimony and a store-generated training receipt that the value of the merchandise recovered from Defendant and his accomplice was

$556.39, without tax. There was testimony that only items from that store would have scanned into the proprietary database, and that items from another store would not have registered a value in the store's database. On the basis of the foregoing evidence, we conclude that a rational jury could have concluded beyond a reasonable doubt that all of the merchandise on the price lists belonged to the store from which Defendant was accused of shoplifting and that the value of the items on the price lists was the value of that merchandise. Therefore, the State introduced sufficient evidence to convict Defendant of shoplifting of merchandise with a value of more than $500. *See id.* (stating that sufficient evidence exists where a rational jury could have found beyond a reasonable doubt all necessary elements to convict).

**CONCLUSION**

**{59}**    For the reasons stated, we affirm Defendant's convictions.

**{60}**    **IT IS SO ORDERED**.

_____

**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**LINDA M. VANZI, Judge**