# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>January 21, 2015</u>

**NO. 32,708**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**GUADALUPE MURILLO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

The Appellate Law Office of Scott M. Davidson
Scott M. Davidson
Albuquerque, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

{1} Defendant Guadalupe Murillo appeals his convictions of two counts of aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(C) (1969), and unlawfully possessing a switchblade knife pursuant to NMSA 1978, Section 30-7-8 (1963). Defendant raises five issues on appeal. Three of Defendant's issues stem from his contention that the switchblade statute is unconstitutional on its face. In this regard, Defendant argues that the switchblade statute (1) violates the right to bear arms guaranteed under Article II, Section 6 of the New Mexico Constitution; (2) violates federal and state substantive due process guarantees; and (3) violates federal and state equal protection guarantees. Defendant also contends that the jury instructions violated his procedural due process rights and that the district court improperly precluded him from presenting evidence in support of his self-defense theory during his opening statement. We uphold Section 30-7-8 as constitutional and affirm the district court.

**BACKGROUND**

{2} Defendant used a switchblade knife to stab two customers at the Wal-Mart in Clovis, New Mexico, where he worked in the tire and lube department. The two victims, Carlos Lopez and Celestino Owen (Owen), were part of a group of shoppers

that included Anna Owen, who was Carlos Lopez's sister and Owen's wife, Owen's twelve year-old brother, and the three Owen children, ages six years, two years, and eight months. Conflicting testimony was presented as to whether the victims and their family members went to the store to purchase supplies for an outing or with the specific intention to attack Defendant or his brother-in-law and co-worker, Daniel Lopez. In any case, there was prior animosity between the parties, and the encounter led to an altercation between Defendant and Carlos Lopez in the grocery aisle. Conflicting testimony was presented as to who initiated the fight. Defendant used a switchblade knife to stab Carlos Lopez multiple times, while Carlos Lopez fought without a weapon. Owen, also weaponless, was stabbed in the neck by Defendant while trying to break up the fight.

**CONSTITUTIONALITY OF SECTION 30-7-8**

{3}     Defendant did not raise his three facial challenges to Section 30-7-8 in the district court. Although these issues were not preserved, we exercise our discretion to review Defendant's arguments because these arguments implicate the general public interest. *See* Rule 12-216(B)(1) NMRA (stating that an appellate court may review unpreserved questions of general public interest); *see also Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 28, 133 N.M. 669, 68 P.3d 909 (stating that we

have invoked the general public interest exception to the preservation rule when review is likely to settle a question of law that affects the public at large).

{4}     In evaluating a facial challenge to the constitutionality of a statute, we examine whether there is any potential set of facts to which the statute can be constitutionally applied. *Bounds v. State ex rel. D'Antonio*, 2011-NMCA-011, ¶ 34, 149 N.M. 484, 252 P.3d 708, *aff'd* 2013-NMSC-037, 306 P.3d 457. Put another way, "we consider only the text of the statute itself, not its application[.]" *Bounds*, 2013-NMSC-037, ¶ 14 (alteration, internal quotation marks, and citation omitted). We do not question the wisdom, policy, or justness of an act of the Legislature. *Id.* ¶ 11. Instead, we presume statutes are valid and, therefore, we uphold them against constitutional challenge "unless we are satisfied beyond all reasonable doubt that the Legislature went outside the bounds fixed by the Constitution in enacting the challenged legislation." *Id.* (internal quotation marks and citation omitted).

**Article II, Section 6 Challenge**

{5}     Defendant argues that Section 30-7-8, under which possession of a switchblade knife is a petty misdemeanor, violates Article II, Section 6 of the New Mexico Constitution, which guarantees the right to bear arms.

{6} Article II, Section 6 reads:

> No law shall abridge the right of the citizen to keep and bear arms for security and defense, for lawful hunting and recreational use and for other lawful purposes, but nothing herein shall be held to permit the carrying of concealed weapons. No municipality or county shall regulate, in any way, an incident of the right to keep and bear arms.

The ban on possession of switchblade knives pursuant to Section 30-7-8 implicates Article II, Section 6 only if switchblade knives qualify as "arms." For the purpose of our analysis, we assume without deciding that switchblade knives are among the arms protected by Article II, Section 6.

{7} Defendant does not argue for a particular level of scrutiny that should apply to the challenged legislation in his argument on this issue. Our cases that have addressed a challenge to a statute under Article II, Section 6 have scrutinized whether the statute was "reasonably related to the public health, safety, and welfare." *State v. Lake*, 1996-NMCA-055, ¶¶ 7, 9, 11, 121 N.M. 794, 918 P.2d 380; *see also State v. Rivera*, 1993-NMCA-011, ¶¶ 5, 7, 115 N.M. 424, 853 P.2d 126 ("An act is within the state's police power if it is reasonably related to the public health, welfare, and safety." (internal quotation marks and citation omitted)); *State v. Dees*, 1983-NMCA-105, ¶ 11, 100 N.M. 252, 669 P.2d 261 (upholding statute against an Article II, Section 6 challenge because the statute was "a reasonable regulation . . . [that] serve[d] a legitimate goal"). This formulation approximates rational basis scrutiny.

*Compare Griego v. Oliver*, 2014-NMSC-003, ¶ 39, 316 P.3d 865 (stating that under rational basis review, "the burden is on the party challenging statutes to prove that the legislation is not rationally related to a legitimate governmental purpose"), *with Dees*, 1983-NMCA-105, ¶ 11 (upholding a firearm control statute because it was "a reasonable regulation . . . [that] serve[d] a legitimate goal"). Rational basis scrutiny is the most deferential standard of review. *Griego*, 2014-NMSC-003, ¶ 39. The least deferential standard of review, strict scrutiny, requires the party defending the statute to "prove that the legislation furthers a compelling state interest." *Id.* In between lies intermediate scrutiny, which requires proof "that the legislation is substantially related to an important governmental interest." *Id.*

{8} The United States Supreme Court has declared that the right to keep and bear arms for self-defense is a fundamental right but abstained from specifying standards of scrutiny that apply to challenges under that right. *McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010). That said, the Court has rejected rational basis review as an overly deferential standard. *District of Columbia v. Heller (Heller I)*, 554 U.S. 570, 628 n.27 (2008); *see also United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010) ("[T]he [Supreme] Court indicated . . . that the rational basis test is not appropriate for assessing Second Amendment challenges to federal laws."); *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1256 (D.C. Cir. 2011) ("*Heller* [*I*]

5

clearly does reject any kind of 'rational basis' or reasonableness test[.]").  The Court also has identified certain longstanding regulatory measures as "presumptively lawful[,]" offering an explicitly non-exhaustive list.  *Heller I*, 554 U.S. at 626-627, 627 n.26.  The lack of specific guidance from the Court as to the appropriate analytical framework for a right to bear arms challenge left a void, or, as the Seventh Circuit has put it, a "quagmire."  *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (en banc).

{9}    Given only general direction by the Supreme Court, federal circuits have developed a consensus to the extent that some form of intermediate scrutiny is appropriate.  *See, e.g.*, *Reese*, 627 F.3d at 798, 802 (applying intermediate scrutiny to analyze a Second Amendment challenge to a federal statute that prohibited possession of a firearm while subject to a domestic protection order); *Heller II*, 670 F.3d at 1247, 1256-58, 1262 (applying intermediate scrutiny to District of Columbia laws requiring registration of firearms, prohibiting assault weapons, and prohibiting magazines that hold more than ten rounds); *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010) (applying intermediate scrutiny to the prohibition of unmarked firearms); *Skoien*, 614 F.3d at 639, 641-42 (applying intermediate scrutiny to federal statute prohibiting firearm possession by persons convicted of domestic violence); *see also* Allen Rostron, *Justice Breyer's Triumph in the Third Battle Over the Second*

*Amendment*, 80 Geo. Wash. L. Rev. 703, 752 (2012) (noting consensus "emerging from the confusion and uncertainty" that intermediate scrutiny is the correct standard of review for Second Amendment claims). We have found only one court reviewing a right to bear arms challenge that has based its holding on a strict scrutiny analysis.[1] *See* Rostron, *supra*, at 753 (writing prior to the Sixth Circuit decision in 2014 that applied strict scrutiny under a right to bear arms challenge, one commentator wrote that "courts . . . have been remarkably unanimous in rejecting the strict scrutiny standard of review.").

{10}    We are not persuaded that we should depart from the post-*Heller I* consensus for intermediate scrutiny to evaluate the statute in question. Viewed from any approach, the switchblade statute is a modest infringement. Because Section 30-7-8 bans only a small subset of knives, which are themselves a peripheral subset of arms typically used for self-defense or security, the statute effects an unsubstantial burden on the right to keep and bear arms. *Cf. Heller I*, 554 U.S. at 629 ("[T]he American people have considered the handgun to be the quintessential self-defense weapon. . . . [H]andguns are the most popular weapon chosen by Americans for self-

---

[1] The Sixth Circuit court in *Tyler v. Hillsdale County Sheriff's Department*, ___ F.3d ___, 2014 WL 7181334, at *17 (6th Cir. Dec. 18, 2014), applied strict scrutiny under a Second Amendment challenge to a federal statute that prohibits possession of firearms by a person who has been "adjudicated as a mental defective or who has been committed to a mental institution[.]" 18 U.S.C. § 922(g)(4) (2012).

defense in the home[.]"). And switchblades are designed for uses that are remote from the core of the right to keep and bear arms. *Cf. id.* at 635 ("[The Second Amendment] elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). Switchblades are specifically "designed for quick use in a knife fight." *State v. Nick R.*, 2009-NMSC-050, ¶ 23, 147 N.M 182, 218 P.3d 868. "[T]hey are more readily concealable [than regular knives] and hence more suitable for criminal use." *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir.1988). Congress passed a statute in 1958, still in effect, that prohibits the transportation or distribution of switchblade knives in interstate commerce and possession within territories of the United States. 15 U.S.C. §§ 1241-1242 (2013). The need for this law was "[t]he problem of the use of switchblade and other quick-opening knives for criminal purposes[.]" S. Rep. No. 85-1980, at 3436 (1958), *reprinted in* 1958 U.S.C.C.A.N 3435. In sum, Section 30-7-8 does not warrant departure from the application of intermediate scrutiny preferred under federal law.

{11} Defendant argues that the New Mexico Constitution affords more protection under Article II, Section 6 than does the Second Amendment of the United States Constitution. We agree that our Constitution, unlike its federal counterpart, specifically protects the right to keep and bear arms for "lawful hunting and

recreational use[.]" *Compare* N.M. Const. art. II, § 6, *with* U.S. Const. amend. II. But Defendant does not argue that our constitutional protection of arms used for hunting and recreation is violated by the prohibition on switchblades. With regard to the standard of scrutiny applied by our courts to challenges under the right to keep and bear arms, New Mexico has not offered greater protections than federal courts under the federal Constitution, at least since *Heller I*. In fact, we observe that our pre-*Heller I* standard for evaluating claims under the right to keep and bear arms, which approximates rational basis review, does not comport with *Heller I*'s statement that "[rational basis scrutiny] could not be used to evaluate the extent to which a legislature may regulate . . . the right to keep and bear arms." *Heller I*, 554 U.S. at 628 n.27. And under *McDonald*, it must. *See McDonald*, 561 U.S. at 791 (holding that the Second Amendment right to bear arms is incorporated against the States and, therefore, applies "equally to the Federal Government and the States."). Accordingly, we can no longer apply rational basis scrutiny to challenges under the right to bear arms. Returning to Defendant's argument, we are not persuaded that our prior cases have afforded even as much scrutiny to challenges to the right to bear arms under our state constitution as is now necessary under the Second Amendment to the United States Constitution, much less offered more protection.

{12} Defendant argues that we should follow the reasoning of the Oregon Supreme Court, that, in *State v. Delgado*, invalidated an Oregon statute that prohibited possession of switchblade knives on the basis that the statute violated the right to bear arms guaranteed by the Oregon Constitution. 692 P.2d 610, 614 (Or. 1984) (en banc). We do not agree and decline to follow the reasoning of the *Delgado* court. *Delgado* focused most of its analysis on whether knives are "arms," concluding that they are, in fact, protected under the Oregon Constitution. *Id.* at 611-14. Having determined that switchblade knives are "arms," the *Delgado* court held, with minimal further analysis and without reference to a level of scrutiny, that the Oregon statute was unconstitutional. *See id.* at 614. ("[T]his decision does not mean that individuals have an unfettered right to possess or use constitutionally protected arms in any way they please. . . . [T]he problem here is that [the challenged statute] absolutely proscribes the mere possession or carrying of such arms. This the constitution does not permit."). Because our courts apply a standard of scrutiny when analyzing constitutional claims, which the Oregon court did not in *Delgado*, we are not persuaded by its decision.

{13} We turn now to an analysis of Section 30-7-8 through the lens of intermediate scrutiny. To survive a challenge under intermediate scrutiny, the government must show that the statute is substantially related to an important government purpose.

10

*Griego*, 2014-NMSC-003, ¶ 39.[2]  The State argues that the purpose of the statute is to protect the public from the danger of potentially-lethal surprise attacks posed by switchblade knives.  As the State points out, our Supreme Court has stated that the switchblade is "designed for quick use in a knife fight."  *Nick R.*, 2009-NMSC-050, ¶ 23.  It is, "by design and use, almost exclusively the weapon of the thug and the delinquent."  *Precise Imp. Corp. v. Kelly*, 378 F.2d 1014, 1017 (2d Cir. 1967).  The purpose of the legislation—protection of the public from the surprise use of a dangerous weapon utilized in large part for unlawful activity—is an important governmental purpose.  Prohibiting the possession of this weapon is, of course, substantially related to this narrow, but important, purpose.

{14}     Defendant points out that Section 30-7-8 does not provide exceptions for places where a switchblade might be carried or for the length of the blade.  Defendant argues, in essence, that although regulation of switchblades might be permissible, the categorical ban instituted by Section 30-7-8 is unconstitutional.  We do not agree.  While the statute might be characterized as prohibiting an entire class of arms (switchblades), it might equally be characterized as a ban on a mere subset of a type

_____

[2] This analysis typically requires an evidentiary basis developed at trial, but in this case Defendant did not raise his facial challenges below, leaving this Court without the benefit of the typical evidentiary record. Other cases have addressed the issue, and, rather than remanding this case to district court, we can address Defendant's arguments based on case law.

of arms (knives) that is itself peripheral to self-defense or home security. Ultimately, Defendant's point is semantic and beside the point. The real issues are: (1) the degree of the burden placed on the right to keep and bear arms, which, in this case, is unsubstantial and (2) the distance from the core of the right, which, in this case, is remote. The fact that the statute effects a categorical ban is not, of itself, decisive. *See Skoien*, 614 F.3d at 641 ("Categorical limits on the possession of firearms would not be a constitutional anomaly.").

{15}     Defendant also argues that the Legislature acted impermissibly because, in enacting Section 30-7-8, it banned switchblades while leaving unregulated other equally dangerous or more dangerous knives. Whether other knives also warrant regulation is a question for the Legislature. The question we face under intermediate scrutiny is whether the prohibition on switchblade knives serves an important purpose. For reasons we have already stated, we think it does. Additionally, although our legal analysis of Defendant's facial challenge is not fact-dependent, the facts of this case nevertheless evince the purpose of the prohibition of switchblades. Here, what might have been a minor confrontation escalated into significant bloodshed in the grocery aisle at the Clovis Wal-Mart. The important harm-reducing purpose of the switchblade statute is not undermined by the fact that banning similar

12

weapons would also reduce harm. Defendant is asking us to question the policy of the Legislature, which we decline to do. *See Bounds*, 2013-NMSC-037, ¶ 11.

{16} We are not satisfied beyond a reasonable doubt that the Legislature violated Article II, Section 6 of the New Mexico Constitution in enacting Section 30-7-8 and, therefore, we uphold the legislation against Defendant's challenge.

**Equal Protection**

{17} Defendant also contends that Section 30-7-8 violates both state and federal equal protection guarantees. The right to equal protection under the law, both state and federal, affords a guarantee that the government will treat similarly situated individuals in an equal manner. *Breen v. Carlsbad Mun. Sch.*, 2005-NMSC-028, ¶ 7, 138 N.M. 331, 120 P.3d 413. A threshold to any equal protection claim is membership in a group that is similarly situated to another group but treated differently by the government because of a legislative classification. *Id.* ¶ 8. Defendant has not addressed this requirement or developed the other aspects of an equal protection argument. We will not construct Defendant's argument on his behalf. *Elane Photography v. Willock, LLC*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alterations, internal quotation marks, and citation omitted)), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1787 (2014). To do so would not only "create[ ] a strain on

13

judicial resources and a substantial risk of error[,]" *id.*, but would also be unfair to the opposing party—in this case, the State—that is not afforded an opportunity to fully develop an opposing argument. For these reasons, we do not consider Defendant's equal protection argument.

**Substantive Due Process**

{18}     Both the United States and New Mexico Constitutions guarantee that when a state deprives any person of "life, liberty, or property," due process is required. U.S. Const. amend XIV, § 1; N.M. Const. art. II, § 18. "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted); *see also Bounds*, 2013-NMSC-037, ¶ 50 ("Substantive due process cases inquire whether a statute or government action shocks the conscience or interferes with rights implicit in the concept of ordered liberty." (internal quotation marks and citation omitted)). Defendant contends that Section 30-7-8 interferes with his right to keep and bear arms, which is fundamental. At the outset of his briefing on this issue, Defendant asserts that Section 30-7-8 violates both the United States and New Mexico Constitutions. But as his brief continues, Defendant refrains from constructing an argument under the New Mexico Constitution, instead explicitly resting only on his conclusion that his

14

federal right to due process has been violated. Therefore, we address only Defendant's argument under federal due process requirements.

{19} The Second Amendment is enforceable against the States. *See McDonald*, 561 U.S. at 791 (stating that the Second Amendment is "fundamental from an American perspective" and is therefore incorporated under the Due Process Clause of the Fourteenth Amendment). Substantive due process analysis requires that we determine the appropriate level of scrutiny to apply to the challenged statute. *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 12, 137 N.M. 734, 114 P.3d 1050. The appropriate level of scrutiny "depends on the nature and importance of the individual interests asserted and the classifications created by the statute." *Id.* Defendant argues that Section 30-7-8 impinges on his right to bear arms guaranteed under the Second Amendment. We observe that Defendant's substantive due process challenge is the federal counterpart to his direct challenge to Section 30-7-8 under Article II, Section 6 of the New Mexico Constitution. Above, we held that intermediate scrutiny is the appropriate standard of review for this statute, citing federal consensus for the application of intermediate scrutiny to challenges under the Second Amendment. Applying intermediate scrutiny to Section 30-7-8, we further held that the statute is not repugnant to the right to bear arms under a federal standard. Accordingly, Defendant's federal substantive due process challenge fails.

15

**JURY INSTRUCTIONS**

{20} Defendant contends that he was denied due process because he was convicted without the jury having found all elements necessary to constitute aggravated battery with a deadly weapon. He argues that the jury should have been instructed that "[a] knife is a deadly weapon only if you find that a knife, when used as a weapon, could cause death or great bodily harm." Defendant further argues that he requested this instruction and that it conforms with the appropriate instruction for aggravated battery with a deadly weapon. *See* UJI 14-322 NMRA. We review Defendant's argument de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (stating that we review the propriety of jury instructions de novo as a mixed question of law and fact).

{21} Defendant's requested instruction is, indeed, part of UJI 14-322. However, the specific instruction in question is only appropriate if the object used for the alleged battery is not among the objects defined by statute as deadly weapons. UJI 14-322, n.5 ("This alternative is given only if the object used is not specifically listed in [NMSA 1978, Section 30-1-12(B) (1963)]."). A switchblade knife is, by definition, a "deadly weapon." Section 30-1-12(B). Because Defendant's switchblade was per se a deadly weapon, the jury was not required to find that the switchblade could cause

16

death or bodily harm.  Accordingly, Defendant was not entitled to his requested instruction.

**OPENING STATEMENT**

{22}    Defendant argues that his trial was unfair and his convictions should be overturned because he was prevented from making any reference to self-defense in his opening statement.  We review the decision of the district court for abuse of discretion. *See State v. Reynolds*, 1990-NMCA-122, ¶ 11, 111 N.M. 263, 804 P.2d 1082 (stating that the latitude of counsel at opening argument is subject to the discretion of the district court and appellate courts review for abuse of that discretion).  A district court abuses its discretion when a ruling is "clearly untenable or not justified by reason."  *State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted).

{23}    Defendant has not provided any citation to the record, and we found no reference to a ruling by the district court, that Defendant was prevented from making any reference to self-defense in his opening statement.  Therefore, we do not agree with Defendant's main premise that he was prevented from any reference to self-defense in his opening statement.

{24}    Although Defendant's assertion that the court prevented all reference to self-defense is too broad, the court did prevent Defendant from referring in his opening

17

statement to an incident that supposedly occurred between one of the victims, Carlos Lopez, and one of the defense witnesses, Daniel Lopez, and to photographs that purportedly showed injuries to Daniel Lopez caused by Carlos Lopez. Defendant wanted to introduce the photographs to show that he was fearful of Carlos Lopez and acted in self-defense when he stabbed Carlos Lopez. Defendant has not made any argument or cited to any authority that the ruling of the district court that prevented mention of this incident or using the photographs in his opening statement was an abuse of discretion. In fact, Defendant did not even mention this ruling in particular in his briefing to this Court. We will not construct Defendant's argument for him. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that we will not develop an unclear argument on behalf of a party). The district court did not abuse its discretion in so limiting Defendant's opening argument.

**CONCLUSION**

{25}    For the foregoing reasons, we affirm the judgment of the district court and uphold Section 30-7-8 against challenge under the Second Amendment of the United States Constitution and Article II, Section 6 of the New Mexico Constitution.

18

{26}    **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**LINDA M. VANZI, Judge**