This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35071**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CHRISTOPHER LUKASIK,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Jennifer J. Wernersbach, P.C.
Jennifer J. Wernersbach
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}**    Defendant appeals his convictions, arguing that the district court violated his right to a speedy trial. After reviewing the record, we conclude that the delay that occurred in this case resulted largely from Defendant's own procedural maneuvers, and that the delay did not violate Defendant's speedy trial right. We affirm.

**BACKGROUND**

**{2}** Defendant sold oxycodone to an undercover narcotics agent in December 2011 and was arrested in connection with that sale on February 17, 2012. He posted bond the next day, and as a condition of his release, he was not permitted to travel outside the county. The State charged Defendant with one count of trafficking oxycodone and one count of conspiracy to commit trafficking oxycodone in June 2012. Defendant filed a motion to dismiss based on a speedy trial violation in November 2014 and reiterated his speedy trial arguments in June 2015 when the case finally went to trial. He was ultimately convicted, and he appealed, arguing that the district court violated his right to a speedy trial. This Court issued an order of limited remand, directing the district court to enter findings of fact and conclusions of law addressing the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Having received the district court's order, we now consider the merits of Defendant's argument.

## DISCUSSION

**{3}** Defendant argues that the district court violated his right to a speedy trial and that his motion to dismiss should therefore have been granted. "We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

### I.  Speedy Trial

**{4}** Both the Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, and Article II, Section 14 of the New Mexico Constitution, guarantee a criminal defendant the right to "a speedy and public trial." *See State v. Garza*, 2009-NMSC-038, ¶¶ 10-12, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). In analyzing whether a violation of the speedy trial right has occurred, we apply the balancing test established in *Barker*, which requires us to weigh the length of delay, the reason for delay, the assertion of the speedy trial right, and prejudice. *See Ochoa*, 2017-NMSC-031, ¶ 4. "[T]he burden of persuasion rests with the [s]tate to demonstrate that, on balance, the defendant's speedy trial right was not violated." *Garza*, 2009-NMSC-038, ¶ 16 (internal quotation marks and citation omitted).

### A.  Length of Delay

**{5}** The length of delay is the first factor we consider in the speedy trial analysis. *See Barker*, 407 U.S. at 530. It functions as a "triggering mechanism" requiring further inquiry into the remaining *Barker* factors if a court determines the length of delay is presumptively prejudicial. *See Garza*, 2009-NMSC-038, ¶¶ 21-23; *see also Ochoa*, 2017-NMSC-031, ¶ 12 (describing the length of delay as both the threshold question in the speedy trial analysis and one factor to be weighed with the other three *Barker* factors). "We calculate the length of delay from the time the defendant becomes an accused, that is, by filing a formal indictment or information or arrest and holding to answer." *State v. Flores*, 2015-NMCA-081, ¶ 5, 355 P.3d 81 (internal quotation marks and citation omitted).

**{6}** Defendant's speedy trial right attached on February 17, 2012, when he was arrested and released with conditions. *See State v. Parrish*, 2011-NMCA-033, ¶ 20, 149 N.M. 506, 252 P.3d 730 (concluding speedy trial right attached on the date of the defendant's arrest and not the subsequent indictment, despite the fact that the defendant later posted bond). Defendant's trial began June 23, 2015. The delay relevant to our speedy trial inquiry amounts to just over forty months.

**{7}** The district court found, and the parties agree, that this case is a simple one, so the forty-month delay in bringing Defendant to trial far exceeds the twelve-month guideline assigned to simple cases. *See Ochoa*, 2017-NMSC-031, ¶ 15 ("We defer to the district court's finding of complexity[.]"); *Garza*, 2009-NMSC-038, ¶ 2 (designating twelve months as the length of delay necessary to trigger a speedy trial inquiry in a simple case). "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. Here, we weigh the length of delay factor heavily in Defendant's favor and continue to the other factors in the *Barker* analysis. *See Garza*, 2009-NMSC-038, ¶ 15 (identifying length of delay as a "triggering mechanism" that prompts further analysis under *Barker*); *State v. Urban*, 2004-NMSC-007, ¶ 20, 135 N.M. 279, 87 P.3d 1061 (holding that a twenty-seven month delay in a simple case weighs heavily against the [s]tate); *State v. Moore*, 2016-NMCA-067, ¶ 11, 378 P.3d 552 (acknowledging that "a delay approximately twice as long as the threshold weighs heavily against the [s]tate"); *State v. Gallegos*, 2016-NMCA-076, ¶¶ 7-8, 387 P.3d 296 (holding that a thirty-two month delay in a simple case weighs heavily against the state).

## B.    Reason for Delay

**{8}** There are four types of delay: intentional or bad-faith delay, negligent or administrative delay, valid or appropriate delay, and delay caused by the defense. *State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121. Intentional delay weighs heavily against the state, while administrative delay weighs only slightly against the state and valid delay weighs neutrally, neither for nor against the state. *See Garza*, 2009-NMSC-038, ¶¶ 25-26; *see also Serros*, 2016-NMSC-008, ¶ 29 (noting that as the length of delay increases, negligent or administrative delay weighs more heavily against the [s]tate). Delay caused by the defense weighs against the defendant. *Serros*, 2016-NMSC-008, ¶ 29.

### February 17, 2012 to July 24, 2012

**{9}** Following Defendant's arrest on February 17, 2012, the Alamogordo magistrate court set a bond and released Defendant with conditions of release the following day. On March 14, 2012, Defendant entered a waiver of arraignment and plea of not guilty. Defense counsel also entered his appearance and made a demand for discovery at that time. On May 16, 2012, Defendant waived a preliminary hearing in magistrate court, and his case was bound over from magistrate court to district court. A month later, on June 15, 2012, Defendant was charged by criminal information with trafficking a controlled substance, contrary to NMSA 1978, Section 30-31-20(A)(1)(b) (2006), and

conspiracy to commit trafficking, contrary to Section 30-31-20 and NMSA 1978, Section 30-28-2 (1979). On July 5, 2012, Defendant entered his waiver of arraignment and plea of not guilty.

**{10}**    The district court filed its first criminal scheduling order and notice of setting on July 10, 2012. The order specifically stated that all pretrial motions were to be filed within ninety days of arraignment, pursuant to Rule 5-601(D) NMRA. [1] The order also stated that a jury trial would be set after August 27, 2012. Two weeks later, the State filed several pleadings: an entry of appearance; a request for trial setting; a certificate of compliance; a certificate of disclosure; a demand for disclosure; and its initial witness list. At the same time, the State filed a demand for notice of an alibi or entrapment defense, pursuant to Rule 5-508(A) NMRA.

**{11}**    The district court order does not account for the time from Defendant's arrest through June 14, 2012. It does, however, attribute the delay from the filing of the criminal information on June 15, 2012 to July 23, 2012—when the State filed its first request for a trial setting—to the State. Defendant argues that because he was not incarcerated but on conditions of release, waived his arraignment, and the State waited until June 15, 2012, to file the criminal information, the four-month delay from February 17, 2012 to June 15, 2012, is attributable to the State. Defendant agrees that the district court properly identified the remaining month from June 16, 2012 to July 24, 2012, as attributable to the State as an administrative delay.

**{12}**    We disagree with both the district court and Defendant. Defendant's position ignores that this matter began in magistrate court, that there was activity on the case in magistrate court, that the case was then bound over to district court and that there were district court proceedings during this time. It appears that during the five months that elapsed between Defendant's arrest on February 17, 2012, and the State's first request for a jury trial setting on July 24, 2012, the case was following the normal course of proceedings. Such delay is weighed neutrally for speedy trial purposes. *See Gallegos*, 2016-NMCA-076, ¶ 11 (weighing time period where case "was proceeding more or less normally" neutrally); *see also Garza*, 2009-NMSC-038, ¶ 27 (acknowledging that some pretrial delay is inevitable and justifiable).

### July 25, 2012 to November 19, 2012

**{13}**    There were no pleadings filed in the case during this four-month time frame. The district court order concluded, and Defendant agrees, that this four-month delay was administrative delay. The State does not address this particular four-month delay.

**{14}**    We agree that this delay is administrative in nature and recognize that a negligent or administrative delay is weighed against the State because "the ultimate responsibility for such circumstances . . . rest[s] with the government rather than with the defendant[.]" *State v. Spearman*, 2012-NMSC-023, ¶ 25, 283 P.3d 272 (internal

---

1 There were a total of nine scheduling orders and notice of settings filed by the district court. Each of these orders contain this pretrial motion deadline language in the first paragraph.

quotation marks and citation omitted). "The degree of weight we assign against the [prosecution] for negligent delay is closely related to the length of delay"; the longer the delay, or the greater the threat to the fairness to the defendant, the less tolerant we are of the delay. *See Garza*, 2009-NMSC-038, ¶ 26. Here, we weigh this administrative delay only slightly against the State because the State requested a trial on July 25, 2012, and at the end of the four-month period, submitted a second request for jury trial on November 20, 2012, after it had not yet received a trial date.

**November 20, 2012 to March 6, 2013**

**{15}**    After filing its second request for trial setting on November 20, 2012, the State filed its proposed jury instructions on December 11, 2012. The district court filed the second criminal scheduling order and notice of setting on January 3, 2013, scheduling trial for March 12, 2013. On February 13, 2013, the district court entered an order setting a plea deadline. Two weeks later, on February 26, 2013, the State filed a request for hearing or "judicial inquiry" to determine whether the case was proceeding to trial. Although the State had been preparing plea offers to provide to defense counsel, defense counsel had not had contact with his client. In light of the upcoming trial, the State wanted to bring this to the district court's attention. At the March 6, 2013 judicial inquiry, defense counsel informed the district court that he was now in contact with his client, and for the first time, advised the district court that he intended to ask for a setting on a dispositive entrapment motion, which had not yet been filed. He went on to explain that there was no need for a trial because if the motion was denied, his client would enter into a conditional plea, preserving his right to appeal. The district court pointed out that the jury trial was set in six days and defense counsel responded by stating that if the entrapment hearing could not be set before trial, he would then ask that the trial setting be vacated. Obviously annoyed, the district court informed counsel that its trial docket was fairly heavy. However, defense counsel assured the district court that there was no risk in vacating the trial because "you know, that it will resolve itself." Nonetheless, the district court informed defense counsel that unless he filed the motion, the case would proceed on the district court's trailing docket for March 12, 2013.

**{16}**    Defendant contends this four-month delay is entirely attributable to the State, or alternatively, it is attributable to administrative delay. In response, the State argues that there was sufficient activity in the case to attempt to move it forward. The district court order attributed the entire delay during this period to administrative delay.

**{17}**    In evaluating the reasons for delay during this time period, we note that between the State's second request for jury trial on November 20, 2012, and the first trial setting of March 12, 2013, the State filed its proposed jury instructions, was preparing plea offers, and requested a "judicial inquiry" knowing that defense counsel had not been in contact with his client, that this lack of contact could have an impact on the upcoming trial, and that the district court had entered an order setting a plea deadline in anticipation of the March 12, 2013 trial. The case was following the normal course of proceedings and we therefore weigh this almost four-month delay neutrally. *See Garza*, 2009-NMSC-038, ¶ 27 (acknowledging that some pretrial delay is inevitable and

justifiable); *see also Gallegos*, 2016-NMCA-076, ¶ 11 (weighing time period where case "was proceeding more or less normally" neutrally); *State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 ("[P]eriods of time considered 'inevitable' and periods during which the case is moved 'toward trial with customary promptness' are not to be weighed against the [s]tate.").

**March 7, 2013 to September 17, 2013**

**{18}** The day after the judicial inquiry, on March 7, 2013, Defendant filed his motion to dismiss "due to entrapment." The district court filed its third scheduling order and notice of jury trial setting, rescheduling trial for June 17, 2013. The district court later entered a notice vacating the June 17, 2013 setting, and the case was subsequently reassigned to a second judge and set for trial for July 8-12, 2013. On July 10, 2013, the State moved to continue the trial because an essential witness was unavailable and Defendant's entrapment motion remained unresolved. Defendant did not oppose the State's motion and the continuance was granted. On August 1, 2013, the case was reassigned to the eventual trial judge and a new trial date was set for September 24, 2013. On September 17, 2013, six months after it was filed, Defendant filed his only written request for a hearing on his entrapment motion.

**{19}** Defendant contends the district court properly concluded that the delay was entirely attributable to the State for requesting a trial continuance, or alternatively, it was attributable to administrative delay. The State argues that the delay from March 7, 2013 to June 17, 2013, should be attributed to Defendant based on his last minute filing of his entrapment motion without a request for hearing. The State also argues that the delay from June 17, 2013 to September 17, 2013, should be attributed to Defendant's pending motion. Alternatively, the State argues because Defendant did not oppose the State's request to continue the July 2013 trial setting, this delay should be considered neutral.

**{20}** We agree with the State. Defendant filed his entrapment motion five days before the March 12, 2013 trial setting, five months after the pretrial motion deadline set out in the district court's scheduling orders, and seven months after the State filed its Rule 5-508(A) demand for notice of an alibi or entrapment defense. As a result, the district court vacated the March 12, 2013 trial after defense counsel emphasized to the district court that no trial setting was needed because his client would enter into a conditional plea agreement if the entrapment motion was denied. It is also important to note that Defendant did not file a request for hearing on his entrapment motion until seven days before the next trial setting of September 24, 2013. In the meantime, the district court set this matter for trial three separate times between March 7 and September 24 and the case was reassigned. We note that the State's motion to continue the second trial setting was based on witness unavailability and "[p]ending legal and procedural issues" related to Defendant's entrapment motion. A missing witness is generally considered a valid delay that weighs neutrally. *Garza*, 2009-NMSC-038, ¶ 27; *see Spearman*, 2012-NMSC-023, ¶ 25 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay." (internal quotation marks and citations omitted)). We therefore attribute this six-month delay from the filing of Defendant's motion to his eventual

request for a setting on that motion to Defendant and weigh it moderately against him. *See Serros*, 2016-NMSC-008, ¶ 29 (stating that delay caused by the defense weighs against the defendant).

**September 18, 2013 to March 3, 2014**

**{21}** On September 19, 2013, Defendant filed a motion to continue the September 24 trial setting. Defendant noted in the motion that: 1) because he had filed a dispositive motion, there was no need for a jury trial; 2) the State concurred in the motion for continuance; and 3) the trial should "be continued and set on any other date and time that the [district c]ourt deems just and proper." The motion was granted the next day. A few days later, the district court set the hearing on Defendant's entrapment motion for October 17, 2013. The day before the scheduled hearing, Defendant requested a continuance, asking that the hearing "be continued and set on any other date and time that the [district c]ourt deems just and proper," but failing to file a separate request for hearing. The State did not oppose the continuance. The district court granted the motion the same day.

**{22}** Three weeks later, on November 7, 2013, the district court filed its fourth criminal scheduling order and notice of jury trial setting, scheduling trial for December 3, 2013. On November 25, 2013, Defendant moved to continue the December 3, 2013 trial setting because his entrapment motion had not been heard. The district court's order, submitted and approved by Defendant and the State, noted that "Defendant waives any and all time limits."

**{23}** The district court filed its fifth criminal scheduling order and notice of jury trial setting on February 3, 2014, rescheduling trial for March 4, 2014. The district court held a status conference on March 3, 2014. At the status conference, defense counsel was unclear of the status of his entrapment motion, explaining he thought perhaps the original judge had ruled on the motion without a hearing, but he was not sure. Nonetheless, he verbally requested a hearing and moved that the March 4 trial be vacated.

**{24}** Addressing the reasons for this delay, Defendant argues that he had to request both the September and December trial continuances because his entrapment motion had not been addressed and because the State had not filed a response to his motion, so the delay should not be counted against him. The State argues that because of Defendant's two requests for continuances, his failure to formally request a hearing on his entrapment motion, and his waiver of any and all time limits, this delay should be weighed against him. The State also points out that it was not required to respond to Defendant's motion, so this could not have been a justification for delay. With the exception of six days, the district court attributed this delay to Defendant. We agree with the State that this six-month delay is attributable to Defendant. *See State v. Grissom*, 1987-NMCA-123, ¶ 34, 106 N.M. 555, 746 P.2d 661 (recognizing that "[d]elay arising from hearing [the] defendants' motions, not caused by the prosecution" is not weighed

against the prosecution in a speedy trial analysis); *see also Serros*, 2016-NMSC-008, ¶ 29 (stating that delay caused by the defense weighs against the defendant).

**March 4, 2014 to April 28, 2014**

**{25}**   The record indicates that there were no pleadings filed in the case between March 4, 2014 and April 28, 2014. Defendant agrees with the district court that this time frame counts as administrative delay. The State continues to argue that the delay is attributable to Defendant because Defendant had still not filed a request with the district court to set his entrapment motion for hearing and because he had waived all time limits. For this almost two-month period, there was no activity to move this case to trial by either party. While we recognize it is the State's responsibility to move this case to trial, Defendant's entrapment motion continued to stall that progression. We also take note that Defendant agreed that he waived any and all time limits. We therefore weigh this delay neutrally. *See Garza*, 2009-NMSC-038, ¶ 27 (stating that delay caused by a valid reason, such as time spent opposing the defendant's pretrial motions, is both inevitable and wholly justifiable (internal quotation and citation omitted)).

**April 29, 2014 to August 4, 2014**

**{26}**   On April 29, 2014, the district court filed its sixth criminal scheduling order and notice of jury trial rescheduling trial for June 4, 2014. The district court subsequently filed its seventh criminal scheduling order and notice of jury trial on July 24, 2014 and again reset the trial, this time for September 4, 2014. On August 4, 2014, the district court scheduled a hearing on Defendant's entrapment motion, setting the matter for August 25, 2014.

**{27}**   Defendant agrees with the district court's ruling that this delay is attributable to administrative delay. Attributing this delay to Defendant, the State points to the district court's two trial settings and Defendant's continued failure to request a hearing on his motion.

**{28}**   Over this three-month timeframe, the district court set the case for trial twice. The district court also set a hearing on Defendant's entrapment motion for August 25, 2014. Defendant's entrapment motion remained outstanding during this time period, preventing trial. Because this delay continued to stem from Defendant's October 16, 2013 request for a continuance of the hearing on his entrapment motion, his failure to request a new hearing necessitating a new trial setting, and his waiver of time limits, we weigh the three-month delay against Defendant. *See Serros*, 2016-NMSC-008, ¶ 29 (stating that delay caused by the defense weighs against the defendant).

**August 5, 2014 to December 3, 2014**

**{29}**   On August 11, 2014, the State filed its amended witness list and a notice regarding the testimony of its expert witness. The next day, the State filed a second and third amended witness list. On August 25, 2014, the day of the scheduled hearing on

Defendant's entrapment motion, Defendant filed a stipulated motion to continue the hearing because defense counsel's wife had major surgery several days before. Defendant's continuance stated that the hearing should "be continued and set on any other date and time that the [district c]ourt deems just and proper." The district court's order granting the continuance submitted by Defendant and approved by the State, again noted, "Defendant waives any and all time limits." Defendant did not immediately file a request to reset the hearing on his motion. Furthermore, we note that the district court's findings indicate that the September 4 trial was also continued by Defendant.

**{30}**   The State filed a response to Defendant's entrapment motion on September 4, 2014. On September 11, 2014, defense counsel filed his entry of appearance in the district court proceedings, discovery demand, and demand for speedy trial. The district court set a hearing on Defendant's entrapment motion to be held on October 31, 2014. The hearing did not take place and it is unclear from the record why it was not held. On November 3, 2014, Defendant filed a motion to dismiss, alleging a speedy trial violation. He also filed a request for setting for all pending motions. The motions hearing was set for November 19, 2014. Also on November 3, 2014, the district court filed its eighth criminal scheduling order and notice of jury trial setting. The matter was set for trial for December 4, 2014. The State filed its response to Defendant's speedy trial motion on November 18, 2014. That same day, defense counsel moved for a continuance of the November 19, 2014 motions hearing because he had a conflict and needed more time to notify his client about the hearing. Defendant's motion again stated that the hearing should "be continued and set on any other date and time that the [district c]ourt deems just and proper." The continuance was granted and the hearing was reset for December 3, 2014, the day before the scheduled trial.

**{31}**   At the beginning of the December 3 motions hearing, the district court confirmed with counsel that the December 4 trial setting was vacated because of Defendant's outstanding motions. Defendant's motion to dismiss for speedy trial violation was heard on December 3. During that hearing, the State argued that the delay in the case was almost entirely attributable to Defendant's entrapment motion and the need to resolve that motion prior to trial. Defendant argued that the delays in getting a hearing set for the entrapment motion constitutes administrative delay and that because of the prolonged nature of that delay, the district court should dismiss the case. We note that defense counsel initially stated that the delay in the case was because the first judge assigned to the case had summarily denied the entrapment motion, without any authority. He also stated that he "believed" the judge withdrew his order, thus the delay. There is nothing in the record, however, to show that the district court took any action on Defendant's entrapment motion prior to the December 3 hearing. To his credit, defense counsel did recognize that some of the delay was "probably" his fault. Defendant's entrapment motion was not heard at the December 3 hearing.

**{32}**   Defendant agrees with the district court's attribution of one month of this delay, August 5 to September 3, 2014, to administrative delay. Defendant, the State, and district court agree that the remaining three-month delay is attributable to Defendant.

**{33}** We agree with the district court and the parties that the three-month delay from September 14, 2014 to December 3, 2014, is attributable to Defendant as a result of his request to continue the September 4, 2014 trial. We further note that it was Defendant who also sought to vacate the August 25, 2014 hearing on his entrapment motion on the day of the scheduled hearing, again making no immediate arrangements to reschedule the hearing. In its order granting the continuance of the hearing approved by *both* parties, the district court specifically noted that "Defendant waives any and all time[]limits." It was not until November 3, 2014 that Defendant filed a request for setting on all his pending motions, which he promptly moved to continue once it was set. We therefore conclude that the entire four-month delay between August 5 and December 4, 2014, is attributable to Defendant's continuance of the motion hearing, and therefore weighs heavily against Defendant. *See Serros*, 2016-NMSC-008, ¶ 29.

**December 4, 2014 to June 23, 2015**

**{34}** At the close of the December 3 hearing, the district court reserved its ruling on the speedy trial issue and scheduled a hearing on December 8, 2014, during which it planned to rule on the speedy trial motion and address Defendant's entrapment motion, which had not been heard on December 3, 2014. The district court subsequently scheduled trial for March 9, 2015, entering its ninth scheduling order and notice of jury trial on February 2, 2015.

**{35}** Lamentably, for reasons that are unclear from the record, the district court vacated the December 8, 2014 hearing that was scheduled to rule on Defendant's speedy trial motion and address his entrapment motion. Nothing more occurred in the case until March 6, 2015, when the district court held a hearing on the pending motions and made an oral ruling denying Defendant's motion for speedy trial. Because the December 4, 2014 trial had to be continued to March 9, 2015, when Defendant moved to continue the motions hearing scheduled for November 19, 2014, we attribute this three-month delay to Defendant.

**{36}** During the March 6, 2015 motions hearing, the State requested "an immediate setting" for a hearing on the entrapment motion and requested a continuance of the March 9, 2015 trial so that it would have time to arrange for its witnesses to testify. The district court granted the State's request to continue the trial and set a hearing on the entrapment motion for March 16, 2015. The district court ultimately held the hearing on Defendant's entrapment motion on March 16, 2015, and after denying the motion, reset the trial for June 23, 2015, when it ultimately took place. We attribute the three-month delay that occurred between the March 9, 2015 trial date and the June 23, 2015 trial to administrative delay because the district court did not hear Defendant's entrapment motion at the December 3, 2014 hearing or at the December 8, 2014 hearing, as it had advised it would, instead, hearing the entrapment motion on March 16, 2015, which required that the March 9, 2015 trial be rescheduled for June 23, 2015.

**Evaluation of Reasons for Delay**

**{37}** As we consider the reasons for the delay in this case, we cannot ignore that Defendant's motion significantly prolonged the proceedings below. Defendant's decision to file the motion does not automatically weigh against him in our speedy trial analysis. Instead, we seek to determine "whether the reasons for the delay in disposing of the motions are attributable to the defendant or to the state." *Flores*, 2015-NMCA-081, ¶ 16. Defendant initially caused much of the confusion in this case by failing to file a hearing request along with his motion. *See* Rule 5-601(F) ("If an evidentiary hearing is required, the motion shall be accompanied by a separate written request for an evidentiary hearing[.]") He then continued to prolong the proceedings by requesting a total of four hearing continuances, often waiting until immediately before the hearing date to file his request, and again failing to submit a request that the hearing be reset. Furthermore, the district court was forced to vacate the trial on at least three separate occasions because Defendant failed to request that a hearing on the entrapment motion be set or reset and the failure did not come to the district court's attention until trial was imminent. We note that it was the State's request that the district court set an immediate hearing on the motion in March 2015 that finally resulted in a hearing on the entrapment motion. We therefore conclude that the district court's delayed disposition of the motion was largely the result of Defendant's procedural maneuvering. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 35, 327 P.3d 1129 (recognizing "the validity of the notion that the time required to respond to or hear a defendant's motion generally does not count against the government").

**Remaining Delay Matters**

**{38}** Throughout its brief, the State repeatedly argues that Defendant's entrapment motion did not comply with the time limits specified by Rule 5-508(A) (providing that "a defendant who intends to offer evidence of an alibi or entrapment as a defense shall, not less than ten (10) days before trial or such other time as the district court may direct," notify the district attorney his intent to introduce entrapment evidence). The State does not indicate anywhere in the record that it objected to, or alerted the district court to, the untimely nature of Defendant's motion, nor does it direct us to any authority to suggest that the untimely filing of a motion obviates a potential violation of a defendant's constitutional right to a speedy trial. The State's argument regarding the timeliness of Defendant's motion is therefore unpreserved, and we will not address it. *See Vigil-Giron*, 2014-NMCA-069, ¶¶ 31-33 (declining to address argument that a defendant's failure to request a hearing on a motion in accordance with local rules because the [s]ate failed to demonstrate preservation of that appellate argument).

**C.    Assertion of the Right**

**{39}** In analyzing this *Barker* factor, we look to the "frequency and force" of Defendant's objections to the delay and use "the timeliness and vigor with which the right is asserted" as an indication of "whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as afterthought." *Garza*, 2009-NMSC-038, ¶ 32. As such, pro forma assertions, while sufficient to assert the right, are given little weight in our balancing analysis. *See Ochoa*,

2017-NMSC-031, ¶ 41. The assertion of the right prong is also the appropriate place to consider Defendant's actions regarding delay—such as the filing of frivolous motions or engaging in procedural maneuvers—because an assertion can be mitigated when a defendant filed motions that are "bound to slow down the proceedings[.]" *Flores*, 2015-NMCA-081, ¶ 31 (internal quotation marks and citation omitted); *see Ochoa*, 2017-NMSC-031, ¶ 42.

**{40}** Defendant did assert his right through a pro forma assertion approximately two and one-half years after charges were leveled against him and in a motion to dismiss two months later, but these late assertions of the right weigh only slightly in Defendant's favor. *See Parrish*, 2011-NMCA-033, ¶ 31 (stating that assertion of the speedy trial right is given less weight the closer it is to trial). In addition, the large number of continuances that Defendant sought in association with the entrapment motion slowed the proceedings in the district court and also served to mitigate the assertion of the right. As a result, this factor weighs only slightly in Defendant's favor. *See State v. Fierro*, 2014-NMCA-004, ¶ 20, 315 P.3d 319 (weighing assertion slightly in the defendant's favor where he slowed the proceedings with motions, despite timely and frequently asserting his speedy trial right).

## D.    Prejudice

**{41}** To prevail on a motion to dismiss on speedy trial grounds, a defendant generally, "must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Garza*, 2009-NMSC-038, ¶ 39. Those interests include the prevention of oppressive pretrial incarceration, minimization of anxiety and concern of the accused, and limitation of the possibility that the defense will be impaired. *Ochoa*, 2017-NMSC-031, ¶ 48. Defendant does not assert that his defense was somehow impaired or that he was subjected to oppressive pretrial incarceration, as he was released on bond the day after having been arrested. Instead, he argues that he was prejudiced because he lost work opportunities, suffered anxiety, and lost standing in the community as a result of the charges against him.

**{42}** "[The d]efendant possess[ed] the burden of production in showing he was prejudiced by the delay[.]" *State v. Marquez*, 2001-NMCA-062, ¶ 23, 130 N.M. 651, 29 P.3d 1052. In support of his argument, Defendant testified that he lost the opportunity to be hired in three different positions because he was unable to leave the county under the terms and conditions of his pretrial release. He made general assertions that he lost jobs because he had to constantly schedule and reschedule jobs around court appearances. However, he neither demonstrates with any particularity the number of jobs he lost as a result of these scheduling difficulties, nor provides any evidence that the loss of those jobs was the result of scheduling conflicts and not some other reason. Defendant also testified that he suffered anxiety and depression as a result of the charges leveled against him and that his relationship with his neighbors had deteriorated because of the intermittent police presence at his home.

**{43}** The *Barker* prejudice factor weighs in the defendant's favor "only where . . . the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35; *see also Spearman*, 2012-NMSC-023, ¶ 39 (declining to conclude, based solely on allegations of counsel, that the defendant suffered undue anxiety). A defendant is not required to show that he experienced "greater anxiety and concern than that attending most criminal prosecutions." *Salandre v. State*, 1991-NMSC-016, ¶ 32, 111 N.M. 422, 806 P.2d 562, *holding modified on other grounds by Garza,* 2009-NMSC-038, ¶ 22. Instead, "[t]he operative question is whether the anxiety and concern, once proved, has continued for an unacceptably long period [and] [i]t is for the court to determine whether the emotional trauma suffered by the accused is substantial and to incorporate that factor into the balancing calculus." *State v. Montoya*, 2015-NMCA-056, ¶ 25, 348 P.3d 1057 (internal quotation marks and citations omitted). Furthermore, "[t]he evidence must also establish that the alleged prejudice occurred as a result of the delay in trial beyond the presumptively prejudicial threshold as opposed to the earlier prejudice arising from the original indictment." *Id.*

**{44}** Here, Defendant testified that he has suffered anxiety as a result of the lost job opportunities and the deteriorating relationship with his neighbors. We do not question the legitimacy of that anxiety, however, we cannot conclude, under the circumstances of this case, that Defendant's anxiety was undue. *Garza*, 2009-NMSC-038, ¶ 35. Nor can we conclude that the anxiety continued for an unacceptably long period of time or that it occurred as a result of the delay in the trial beyond the presumptively prejudicial threshold. *See id.* (requiring that anxiety result from an unacceptably long period of time). It was Defendant's procedural maneuvers that delayed a ruling on his entrapment motion, delayed his trial, and therefore contributed to his anxiety. Defendant relies on *Marquez* to support his claim that his lost job opportunities are sufficient to support his claim that he suffered prejudice. *Marquez*, however, is distinguishable because the defendant in *Marquez* did not exacerbate the delay of his trial, as was the case, here. Defendant has failed to show that he was prejudiced by the delay in bringing him to trial.

## E.    Balancing the Factors

**{45}** Though the delay that occurred in this case was extreme, it is clear from the record that the delay resulted largely from Defendant's failure to obtain a ruling on his own motion. Defendant's case was set for trial eleven times in forty months from the date of his arrest. The State sought two trial continuances, both related to the fact that Defendant's entrapment motion had not been decided. Whereas Defendant sought two trial continuances, two motion hearing continuances, and two combinations of trial and motion hearing continuances—necessitating the vacation of several hearings on his entrapment motion and trial settings. This resulted in about a twenty-two month delay that weighs against Defendant, an approximate seven-month delay attributable to the State, and about an eleven-month neutral delay. While Defendant asserted his right, pro forma, two and one-half years after the charges were brought against him, his actions in delaying the progress of his case mitigated his assertion, thus this factor is only weighed minimally in his favor. Finally, we hold that Defendant was unable to establish particularized prejudice. We conclude that the *Barker* factors support the district court's

denial of Defendant's motion to dismiss on speedy trial grounds. We conclude that the delay did not violate Defendant's speedy trial right.

## II.    Equal Protection and Substantive Due Process

**{46}**    Defendant argues that the district court erred when it failed to dismiss his case on speedy trial grounds following this Court's limited remand. The proceedings in Defendant's case occurred in tandem with Defendant's wife's case, down to having the same legal and factual arguments made by the same attorney, and virtually identical procedural postures. Despite these similarities, the district court, on limited remand from this Court, dismissed the charges against Defendant's wife based on a speedy trial violation. Defendant sought a limited remand from this Court to obtain the same result in the district court. The district court, however, refused to dismiss the charges against Defendant, citing its belief that the remand in Defendant's case differed from that of his wife by not authorizing the district court to reconsider the merits of the speedy trial claim.

**{47}**    The district court was mistaken in this regard. The orders in the two cases—Defendant's case and Defendant's wife's case—were virtually identical. They contained the same language authorizing the district court "to revisit its ruling if it is inclined to do so." Nothing in the limited remand filed in Defendant's case limited the district court's authority to reconsider its speedy trial decision.

**{48}**    Despite the district court's apparent misinterpretation of our limited remand order, we conclude that Defendant is not entitled to dismissal. Defendant failed to develop his argument that the district court's actions violated his right to equal protection and due process. "A threshold to any equal protection claim is membership in a group that is similarly situated to another group but treated differently by the government because of a legislative classification." *State v. Murillo*, 2015-NMCA-046, ¶ 17, 347 P.3d 284. An equal protection analysis then considers the appropriate level of scrutiny, either based on the rights affected or the status of the group affected, and the level of scrutiny applied also dictates which party has the burden of proof. *See Breen v. Carlsbad Mun. Schs.*, 2005-NMSC-028, ¶ 8, 138 N.M. 331, 120 P.3d 413. Defendant has not provided any meaningful analysis or citations to relevant authority. We will not construct Defendant's argument on his behalf. *See Murillo*, 2015-NMCA-046, ¶ 17 (noting that creating arguments for the parties strains judicial resources, creates a substantial risk of error, and would be unfair to the opposing party who has not had the opportunity to fully develop an argument). We conclude that the district court did not err in denying Defendant's motion to dismiss for a speedy trial violation, and Defendant has failed to adequately develop his equal protection and due process arguments to allow this Court to review it.

## CONCLUSION

**{49}**    We affirm.

**{50}** IT IS SO ORDERED.

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**M. MONICA ZAMORA, Judge Pro Tempore**